JuanJose Martinez-Madera  A 14-647-093  Detained at ICEl-El centro Processing Center  1115 Imperial Ave.  El Centro, California 92243-1739

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

FILED
NOV 2 6 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                                    DEPUTY

In The Matter Of:
JuanJose Martinez-Madera,   A 14-647-093   )     November 4, 2007
                                           )     <u>Civil</u> File
Plaintiff- Petitioner   (In Pro Se)        )     '07CV 2237 JLS  WMc
                    Vs.                    )
                                           )     Case No.
MICHAEL CHERTOFF, Secretary of the Department of )
Homeland Security; MICHAEL B. MUKASEY, Attorney ) **PLAINTIFF'S:**
General; JULIE L. MYERS, Assistant Secretary, United )
States Board of Immigration and Customs Enforcement )
(BICE); ROBIN BAKER, San Diego ICE-Field Office )  PETITION FOR
District Director; ROBERT G. RILLAMAS, Assistant )
ICE-Field Office District Director-El Centro; JOEL )  **WRIT OF HABEAS CORPUS**
MATA, Supervisor of Deportation Officers-El Centro )
Processing Center, El Centro, California          )     Pursuant to:
        Defendants-Respondents                    )     [28 U.S.C. 2241]
_____ )     (with an eye towards a class-action lawsuit)

## INTRODUCTION

I, Petitioner, JuanJose Martinez-Madera, a very long-time (42 years) **Legal Permanent Resident** (LPR) have been detained in immigration custody going on three **(3)** years already, even though I **do not** present a flight risk (I have **always** kept all my appointed court dates), and am surely **not** a danger to the community or to no one else that would <u>absolutely</u> justify such very prolonged, unlawful and indefinite detention.

During those over two years of continuous immigration detainment, I, JuanJose Martinez-Madera have never received any constitutionally mandated, individualized hearing in a courtroom in front of a judge to determine if my continued detention is still warranted; the kind of hearing that is constitutionally required to justify detention of such excessive length. At one year-2 months of ICE-detainment I had my <u>initial</u> "**6-month custody review**" I sent ICE a 49-page packet showing without a shadow of a doubt that I present no flight-risk or danger of any kind to no one no matter what has happened. This 49-page packet contained letters of recommendation and support from members of my family, including extended family, neighbors, friends, co-workers and my plant superintendent where I worked for 7 years in the same company. I also worked for 17 years in another company until I got laid-off. My true, full, complete and unadulterated record shows a very solid work record and very, **very** strong family & community bonds as a sports player/coach/volunteer/teacher/counselor and friend (good listener). ICE denied me my freedom deciding to continue my detention citing their usual default

1  reasons "Flight Risk" and "Danger to the Community" without regards to the 49-page packet that I had sent
2  them and on my second "annual" (**6-month custody review**), their vengeful tactics and actions also show
3  clearly by their use of very punitive phrases like ( . . . we decided to continue detention "because of your
4  crime") and (. . . are an "x-treme" danger to the community) which is not true and even though my true, full,
5  complete and unadulterated record shows otherwise, that I am a man of peace and that I have never had any
6  problems w/anyone in my life x-cept, my x-wives with me. Also the fact that I do **not** owe any time to no one.

7  I JuanJose Martinez-Madera have a claim of derivative citizenship pending before the Ninth Circuit Court of
8  Appeals that can still take from one to five more years by and of itself to resolve based on the huge load and
9  backlog of cases still pending before this court; my initial brief to the court was just due June 16, 2007 after a
10 couple of extensions were asked for and granted to take care of small legal matters.

11 Besides my pending case that can still take a very long time, I plan on challenging the court's interpretations
12 on rulings that in certain circumstances, situations, special and specific cases, do not consider a step-father as a
13 legitimate father for immigration purposes, yet, he is considered a legitimate father for other things like legal
14 and economic responsibility for his actions, inheritance, taxes, etc. I plan 3 other valid challenges of
15 immigration rulings and practices. This lawsuits **can** take up to ten (10) years or more to resolve, which makes
16 my continued, prolonged detention "**indefinite**" for that very same reason, that no one knows how long it can
17 take to resolve, making my continued, prolonged, indefinite detention unjustified and unlawful which this
18 habeas action addresses and prays for a **grant of relief** in the form of immediate release from respondents'
19 custody and detainment. To be able to wait for the final resolution of my pending and meritorious case at the 9th
20 Circuit Court outside, working and paying taxes; being with my family, some of which are in great need of my
21 care because of their many health problems and issues, especially my elderly parents and one older sister. I also
22 have two minor U.S. Citizen children that also need my attention and support out there.

23 My going on three (3) years of ICE-detention flagrantly violates Ninth Circuit precedents which places strict
24 statutory and constitutional limits on the government's power to detain "**CIVIL**" **Legal Permanent Residents** for
25 prolonged periods of time without adequate procedural safeguards. Under the Ninth Circuit's recent decision,
26 **Nadarajah v. Gonzales**, 443 F.3d 1069 (9th Circuit 2006), I should be immediately released because my
27 prolonged detention is not statutorily authorized. **See id**. at 1078, 1080-81 holding that (the general immigration
28 detention statutes do not authorize prolonged and indefinite detention). Moreover, under the Ninth Circuit's
29 earlier decision in **Tijani v. Willis**, 430 F.3d 1241 (9th Cir. 2005), even if the immigration statutes were found
30 to authorize such prolonged detention, which they do not, I would still be entitled to an immediate hearing
31 before an immigration judge in a courtroom where the government would be required to absolutely justify my

JuanJose Martinez-Madera  A 14-647-093  Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

1 continued detention. **See id**. at 1242 holding that (over two years of detention is <u>not</u> **"expeditious"** and orders
2 that the government release the petitioner unless it establishes at a hearing before an immigration judge that his
3 continued detention was absolutely justified), beyond suspicions; like a case of a real, known and/or admitted
4 terrorist or for treason (an anti-government person), but for no other reasons or excuses the way they (ICE)
5 always try to justify their denials with no real proof, only with the same written or oral arguments.

## CUSTODY

7 Petitioner is in the physical custody of respondents and the Department of Homeland Security ("DHS") and
8 is detained at the **ICE El Centro Processing Center  1115 North Imperial Avenue  El Centro, California**
9 **92243-1739** and is under the direct control of Respondents and their Representatives/Agents.

## JURISDICTION

11 This court has subject matter jurisdiction over this matter pursuant to **28 U.S.C. 2241** (habeas Corpus), **28**
12 **U.S.C. 1651** (All Writs Act), and the Suspension Clause of Article 1 of the U.S. Constitution. **INS v. St. Cyr**,
13 533 U.S. 289, 304, (2001). The Federal District Courts have jurisdiction to hear habeas petitions by non-citizens
14 challenging the lawfulness of their detention by ICE. See, e.g., **Demore v. Kim**, 538 U.S. 510, 516-17 (2003);
15 **Zadvydas v. Davis**, 533 U.S. 678, 687 (2001); **Victor Martinez v. Alberto Gonzales**; **Paul Guevara**
16 **Macalma v. Michael Chertoff**; **Nadarajah v. Gonzales**, 443 F.3d 1069, 1075-76 (9th Cir. 2006) holding that
17 (cases not challenging final orders of removal remain within the jurisdiction of the district court under **28**
18 **U.S.C. 2241**). (see note [3] on page 8). This court also has jurisdiction to hear My statutory and constitutional
19 claims under **28 U.S.C. 1331**, which confers jurisdiction to consider federal questions. **Walters v. Reno**, 145
20 F.3d 1032, 1052 (9th Ciorcuit 1998).[1]
21 This Court may grant relief under **28 U.S.C. 1331** (federal questions); **28 U.S.C. 1651** (All Writs Act); **28**
22 **U.S.C. 2241** and **2243** (habeas Corpus); and **28 U.S.C. 2201-02** (declaratory relief).

---

27 [1] The Due Process Clause and article III of the Constitution also require that some judicial forum remain
28 available for petitioner to challenge the lawfulness of his detention.

JuanJose Martinez-Madera  A 14-647-093  Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

## VENUE

Venue is proper in the Southern District Federal Court of California-San Diego, pursuant to 28 U.S.C.(d) because I am incarcerated at the ICE El Centro Processing Center 1115 Imperial Avenue El Centro, California 92243-1739 which is within this district.

## PARTIES

I, <u>Petitioner</u>, JuanJose Martinez-Madera am a 54 year old male that came legally to the United States with all of my family 42 years ago (Dec. 22, 1965) when I was a minor child. I believe I have **dual** Mexico &, U.S. citizenship through my U.S. Citizen (U.S.C.) father and appealed the Immigration Judge's denial. The Board of Immigration Appeals (BIA) affirmed and I appealed all the way to the 9th Circuit Court of Appeals where it is now pending resolution. September 14, 2007 was the last of my deadlines in said court.

<u>Respondent</u> Mr. **Robin Baker** is the ICE-San Diego District Field Office Director (DFOD) that covers the El Centro, California area. Mr. Baker in his official capacity has legal custody of me and is authorized to release me. Mr. Baker is sued in his official capacity.

<u>Respondent</u> Mr. **Robert G. Rillamas** is the Assistant Field Office Director (AFOD) of ICE Detention and Removal Operations that covers the ICE-El Centro Processing Center in El Centro, California. Mr. Rillamas also has legal custody of me. Mr. Rillamas is sued in his official capacity.

<u>Respondent</u> Mr. **Joel Mata** is the Supervisor of Detention and Deportation Officers (SDDO) at the ICE-El Centro Processing Center-El Centro, California. Mr. Mata has legal custody of me. Mr. Mata is sued in his official capacity.

<u>Respondent</u> Mr. **Michael B. Mukasey**, Attorney General of the United States, head of the Justice Department which encompasses the BIA. Mr. Mukasey is responsible for the administration of the Department of Homeland Security (DHS) and the implementation and enforcement of the Immigration and Naturalization Act (INA). As such, Mr. Mukasey has ultimate custodial authority over me. Mr. Mukasey is sued in his official capacity.

<u>Respondent</u> Mr. **Michael Chertoff** is the Secretary of Homeland Security and heads the department of Homeland Security, the arm of the U.S. Government responsible for enforcement of immigration laws, Mr. Chertoff also has legal custody of Mr. Martinez-Madera. Mr. Chertoff is sued in his official capacity.

<u>Respondent</u> Ms. **Julie L. Myers** is the Assistant Secretary of ICE, the arm of the U.S. Department of Homeland Security charged with detaining and removing aliens pursuant to federal immigration law. Ms. Myers is a legal custodian of Mr. Martinez Madera. Ms. Myers is sued in her official capacity.

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

The Immigrants' Rights Project (IRP) and the American Civil Liberties Union (ACLU) as:
**AMICUS (Friends of the Court) "Amici"**

The Immigrants' Rights Project (IRP) an arm of the American Civil Liberties Union (ACLU) is charged in particular with the important task of protecting the enforcement of the constitutional and civil rights of non-citizens by engaging in a nationwide program of litigation, advocacy and public education. From the federal district courts to the U.S. Supreme Court, the IRP has played a leading role in litigation challenging the government's power to subject non-citizen's to indefinite and mandatory detention without absolute, justifiable cause. Indeed the authority upon which Mr. Martinez Madera relies in his Petition for Writ of Habeas Corpus is the direct result of the IRP and other law-entities' longstanding litigation efforts in the federal courts without which many more <u>abuses</u> against the most defenseless would go <u>undetected</u> and <u>worse yet</u>, **<u>unchallenged</u>**.

Many un-represented detainees at immigration detention facilities remain incarcerated with little ability to enforce their statutory and constitutional rights under binding Supreme Court and Ninth Circuit Court of Appeals precedents, for those very reasons that they are <u>incarcerated</u> with limited resources or recourses, and also are "<u>un-represented</u>". The ACLU is a nationwide, non-partisan organization of approximately 500,000 members dedicated to help enforce on behalf of all persons, regardless of immigration status, the fundamental rights that the Constitution and laws of the United States guarantee. Therefore, ACLU & IRP, <u>as</u> **"<u>AMICI</u>"** have been of service to the Courts in deciding the complex and significant statutory and constitutional issues raised by immigration detainees' inordinate, lengthy detentions.

The IRP and the ACLU of San Diego, Imperial and Los Angeles Counties recently have filed various similar habeas actions on behalf of other immigration detainees held at other detention facilities. ***See Bravo Pedroza v. Atunez,*** et al., No. 06-1176 (S.D. Cal., Pet. for Writ of Habeas Corpus filed Sept. 1, 2006) from SDCF. Very notably, in that particular case, instead of attempting to justify the excessively prolonged detention of the petitioner, the government simply released him from immigration custody on his own recognizance. [2]

---

[2] More recently, the IRP and the ACLU of Southern California filed habeas petitions in the Central and Southern Districts of California on behalf of previously un-represented immigration detainees who, like Mr. Martinez Madera, were subject to prolonged and indefinite detentions pending conclusions of their removal proceedings. Those petitions have resulted in the release of various non-citizens who had been detained for periods ranging from approximately nineteen months to more than four years. *See **Diouf v. Gonzales**,* et al., No. 06-7609 (CD. Cal., Pet. for Writ of Habeas Corpus filed Nov. 21, 2006; ***Rasheed v. Gonzales***, et al., No. 06-7449 C.D. Cal., Pet. for Writ of Habeas Corpus filed Nov. 21, 2006; ***Soeoth v. Gonzales***, et al., No. 06-7451 (C.D. Cal., Pet. for Writ of Habeas Corpus filed Nov, 21, 2006; ***Paul Guevara Macalma v. Michael Chertoff***, No. 06-2623, filed around late March of 2007; and various other similar cases filed lately and winning detainees their freedom while pending resolution of their cases. They can now wait as long as needed for resolution of their cases without the many hardships of detainment.

## BACKGROUND (personal)  (note-I as the third person singular pronoun)

Mr. Martinez-Madera is a 54-year-old LPR male. He was brought legally to the United States as a minor child by his U.S.C. step-father which is the only father he has ever known, his biological father only got his mom pregnant. He has never seen him, not even in a picture. His stepfather has been in his life continuously since he was <u>4 months old</u>, 54 years ago which is all of his life – hence his claim to derivative citizenship and his hope to successfully challenge immigration laws, rulings and practices that in these type of circumstances and situations a step-father is not considered a legitimate father for immigration purposes but is considered a legitimate father for other things like taxes, child support, dependents, legal & schools responsibility, inheritance among others.

His "father" brought the entire family legally to the U.S. on December 25, 1965, 42 years ago when he was a minor child, and has been in the United States ever since. Mr. Martinez-Madera has a large extended family, all are U.S. Citizens, all live in the United States.

Mr. Martinez-Madera is <u>NOT</u> a gang member. He don't smoke, he don't drink, he don't do drugs, he don't say bad words even though he knows them all. He shows 1) a very strong work record 2) a strong volunteer record of teaching and coaching others 3) strong community ties including decades of participation in organized sports, and 4) a very strong and loyal family bond.

He was charged and convicted of attempted murder and he still maintains his claim of innocence <u>**of those**</u> <u>**charges**</u> and believes that the real reason he was convicted (**of those charges**) was for being ignorant of the laws and court proceedings and for being poor and without influence unlike rich and famous celebrities. He believes that The Justice System is not perfect and for this reason, there are many like himself that fall through the cracks without anybody even knowing about it, much less doing anything about it; and now he is going through immigration deportation proceedings because of that conviction, being detained indefinitely by immigration – ICE-El Centro, California based on an incomplete, adulterated and inaccurate record.

Mr. Martinez-Madera is a G O D fearing person. His full, true, complete, and unadulterated record will show a very responsible, caring person. A very hard worker. A man of peace except where he slipped once when he had a nervous breakdown. <u>**All**</u> of his record shows Mr. Martinez-Madera to be a very helpful individual, volunteering his time to contribute his "grain of sand" to effect positive changes in his community or in any other group setting he happens to be in at the time by among other things: coaching team sports, conducting Bible Studies or classes on ESL(English as a second language), SSL(Spanish as a second language), Illiteracy classes(in both English and Spanish), mathematics, history, nutrition & exercise, etcetera; trying to never waste any valuable time and using it as wisely, progressively, constructively and positively as possible.

1  By his "full, true, complete and unadulterated record" is meant exactly that, his work record, his volunteer
2  record, his church record, school records, employment grading reports. E V E R Y T H I N G in his life, both
3  positive and negative, and not just the negative stuff that is received from let's say the district attorney's offices
4  and such places which are notorious for exaggerating events. The true, complete and unadulterated record will
5  show that he has never had any problems w/anyone in his life except with his 2 wives. One abused him
6  physically, mentally and emotionally because she considered herself a high-society individual and considered
7  him a lower class person, a "ranchero" (a ranch-hand or farm hand). Eventually she turned everything around
8  against him and the law sided with her and backed her up because of the current domestic violence politics and
9  climate in this country. The other one was a loose woman seeing at least 3 other men while married to him, that,
10 along with at least 7 other crises he was going through simultaneously that, even taken singly, would have
11 caused a nervous breakdown in almost any other person, including those sitting in judgment. Mr. Martinez-
12 Madera admits to having had a sharp (stupid) mouth and trying to use it to get some fair justice when he got
13 frustrated not being able to legally defend himself. He also admits to having had a nervous breakdown caused
14 by all of these multiple, simultaneous crises but still triggered physically at that moment by his wife when she
15 got angry at him, pushing him so hard that she almost got him out of his shoes, this, at the wrong moment when
16 he was barely hanging-on to his sanity by a thread and that the government exaggerated, blew way out of
17 proportion and lied about it and charged him with premeditated murder which they made stick with tricks and
18 lies and that he was unable to beat those charges for lack of money, no legal knowledge and/or skills (legal
19 ignorance) and is still going through some tough times because of those convictions.

20              (LEGAL) **BACKGROUND**   continued
21
22    ICE has detained Mr. Martinez-Madera since September 22, 2005 while he challenges the government's
23 efforts to remove him to Mexico, a country that he does not know. A country he has not seen since he left 42
24 years ago when he was a minor child except for a few days at a time for a couple of times on vacation. He does
25 not even know the currency there. A country where he does not have anybody to go to or stay with.
26    During all this lengthy time incarcerated by ICE, the government has never had to justify his prolonged
27 detention in a hearing before an immigration judge proving that Mr. Martinez-Madera presents a danger to the
28 community or a flight risk sufficient to justify his lengthy detention. Seems to Mr. Martinez-Madera that ICE
29 always base their decision to continue detentions only on the criminal records from the courts which are only
30 records of negative content and never contain nor they see nor take into account or consideration any positive
31 stuff of detainees lives and that is an issue raised here; that those are incomplete & inaccurate records of their
32 lives, adulterated and distorted because of the zealousness of District Attorneys and others to obtain a

Case 3:07-cv-02237-JLS-WMC   Document 1   Filed 11/26/2007   Page 8 of 19

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

1  conviction at any cost sometimes for political purposes and for other reasons. That slice of detainees' lives that
2  that record shows is not the complete truth of who they really are for lack of positive content of it. It is hoped
3  that ICE would take everything into consideration, both negative and positive; for a truthful and correct
4  evaluation of detainees to decide to release them or not and wait for the resolution of their cases out there, with
5  their families where they belong; working, paying taxes and taking care of their family members which in his
6  case, are in special & urgent need of him, some, because of their many health issues related to their older-age.

7  Mr. Martinez-Madera is detained under 8 U.S.C. 1226, one of three general immigration detention statutes
8  that govern the detention of most non-citizens whom the government is trying to remove. See 8 U.S.C. 1226
9  (authorizing detention of aliens pending a determination of removability); 8 U.S.C. 1231 (a) (authorizing
10 detention of aliens with a final order of removal during and after the removal period); 8 U.S.C. 1225 (b)
11 (authorizing detention of aliens seeking admission).[3] The Ninth Circuit has narrowly construed these general
12 immigration detention statutes – those statutes that do not specifically authorize prolonged detention – at least
13 twice in recent months. See **Nadarajah v. Gonzales**, 443 F.3d 1069, 1078, 1080-81 (9th Circuit 2005) (holding
14 that "the general immigration detention statutes **do not** authorize the Attorney General to incarcerate detainees
15 for an indefinite period," and requiring **"immediate release"** of detainees held for nearly five years under 8
16 U.S.C. 1225 (b); See **Tijani v. Willis**, 430 F.3d 1241, 1242 (9th Circuit 2006 (construing 8 U.S.C. 1226 (c) to
17 authorize mandatory detention only where removal proceedings are **"expeditious"** and ordering hearing where
18 detention had lasted for thirty (30) months).

19 As explained infra, petitioner's prolonged detention **is not** authorized by statute under each of these and other
20 Ninth Circuit precedents. Moreover, if it were authorized by statute, his prolonged detention would still violate
21 the Due Process Clause; See generally **Zadvydas v. Davis**, 533 U.S.678, 690 (2001), **Mr. Ma v. Ins**(1999).
22 _____
23 _____
24
25 [3] There is disagreement about what statute governs detention in cases like these. Under the government's view,
26 petitioner's detention is governed by one of the general detention statutes–Section 1231 (a) – because the immigration
27 courts have issued a final order of removal, as in the present case; however, that statute does not apply where a removal's
28 order has been judicially stayed, again, as is the present case here, See 8 U.S.C. 1231 (a) (1) (B) ("removal period" does
29 not begin to run when stay is in effect); Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2006) (applying 8 U.S.C. 1226
30 rather than 8 U.S.C. 1231 (a) to cases involving alien whose removal was stayed).This disagreement is irrelevant to this
31 Court's resolution of petitioner's case As explained infra, none of the general detention statutes authorize petitioner's
32 prolonged indefinite detention, See also Nadarajah v. Gonzales, 443 F.3d 1069, 1078-79 (9th Circuit 2006) (contrasting
33 general detention statutes that **do not** authorize prolonged detention, with specific national security detention statutes that
34 **do** explicitly authorize prolonged detention under certain limited circumstances) concerning national security-
35 related detentions, which are not at issue here at all. See id at 1078. See Zadvydas, 533 U.S. at 701.

Petitioner raises three (3) distinct challenges to his indefinite detention. **1)** His <u>primary legal claim</u> is that because his removal is <u>not</u> reasonably foreseeable, he should be released pursuant to the Ninth Circuit's decision in **Nadarajah v. Gonzales**, 443 F.3d 1069 (9th Circuit 2006). **2)** In <u>the alternative</u>, because his removal have far <u>exceeded</u> the "**expeditious**" period for which Congress authorized mandatory detention, (normally 6 months), he argues that the statute under which he is detained must be construed to require that he be afforded an individualized hearing to determine whether or not his continued detention is justified (taking into account several factors including danger, flight risk, and the length of detention) so as <u>to</u> <u>avoid</u> a **Due Process Violation.** <u>See</u> **Tijani v. Willis**, 430 F.3d 1241 (9th Circuit 2006). **3)** <u>Finally</u>, he argues that even if the statutes were read to authorize his prolonged and indefinite detention, then his continued detention still would violate the <u>Due Process Clause</u>, not only because of the lack of a hearing in a courtroom in front of a judge, but also because the sheer length of his detention renders it excessive in relation to its intended purpose which is to "streamline deportation proceedings."

## ARGUMENTS:

For the reason that there is 1.) **no** anticipated time limit for a final resolution on Mr. Martinez–Madera's case where it is now pending at the Ninth Circuit Court of Appeals, he should be released. 2.) For the reason that Mr. Martinez-Madera does **not** owe any time to no one, he should be released. 3.) For the reason that Mr. Martinez-Madera is **not a terrorist! nor a danger to no one!**, he should be released. 4.) For the reason that Mr. Martinez-Madera is **not** a flight risk, he should be released, and if he is, it should be proven with concrete proof by the government in a court of law. 5.) For the reason that Mr. Martinez-Madera's prolonged and indefinite detention by ICE runs roughshod over the immigration laws of the United States and it's Constitution, he should be released. 6.) For the reason that **Civil** detainments in this places are run in many ways worse than at level 4 criminal State Prisons, **very punitive** and **restrictive**, he should be immediately released under proper orders of supervision conditioned to prevent flight risk and safeguard the community.

The Federal Courts (District, Courts of Appeals and the Supreme Court) have all already dealt with many governments' (ICE, DHS, INS, etc.) schemes, divertive tactics, manipulations and evasions of the laws for years already in trying to justify prolonged, indefinite detentions for many detainees in many cases, resulting in a lot of common sense determinations by The Courts, examples: **Nadarajah**, 443 F.3d at 1081 ("Nor are we persuaded by the government's argument that because the Attorney General will someday review Nadarajah's case, his detention will at some point end, and so he is not being held indefinitely. No one can satisfactorily assure us as to when that day will arrive, meanwhile, petitioner remains in detention"); **Zadvydas**, 533 U.S. at 701 finding that ("for detention to remain reasonable, as the period of prior post-removal confinement grows,

Case 3:07-cv-02237-JLS-WMC   Document 1   Filed 11/26/2007   Page 10 of 19

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

what counts as the 'reasonable foreseeable future' conversely would have to shrink."); **Tijani**, 430 F.3d at 1242 noting that (appeals to the Ninth Circuit generally take "a year or more" to resolve). There are detainees that have been in detention 4, five years or more already because there is no set time-frame for a decision by the Courts; **Demore**, 538 U.S. at 523, also, the Supreme Court in this case, again emphasized that (immigration detention should be limited by a reasonableness standard). 538 U.S. at 527-28, There, a non-citizen in removal proceedings challenged the constitutionality of the pre-removal-order mandatory detention provision, INA § 236 (c), 8 U.S.C. § 1226 (c). The Court focused on the briefness of the time needed to complete a non-citizen's removal as a key factor in rejecting the challenge. **Id**. At 522-23, 530-31 holding that (the Due Process Clause did not forbid such detention "**for the brief Period necessary**" for removal proceedings); *See also id*. At 530 ("in sum, the detention at stake under § 1226 (c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.") Note: this was before the present bottleneck of cases, now it is taking longer; Ly v. Hansen, 351 F.3d 263, 269-70 (6th Circuit 2003) holding that (although criminal aliens may be incarcerated pending removal proceedings, the period of incarceration must bear a reasonable relation to the purpose of removal); In Zadvydas, 533 U.S. at 699, the Court said that in order to avoid the serious Due Process problem that would arise from a statute that permits indefinite detention, the Court held that ("once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute"); The government insists in their oppositions to release, that if, a detainee seeks a stay of removal in the Federal Circuit Courts and keeps challenging his removal order, that that means his detention is "voluntary" which is not true. That Mr. Martinez-Madera sought a stay of removal in the Ninth Circuit Court and it was granted and is challenging his removal order does **not** render his detention either "**voluntary**" or any less objectionable. Indeed, in Tijani, 430 F.3d at 1242, The Ninth Circuit did not consider the petitioner's detention pursuant to a stay of removal pending court of appeals review as "voluntary," but rather included it as part of the two years and eight months of mandatory detention that was constitutionally problematic. *See* Id. at 1247 (Tashima, J., concurring) explaining how (non-citizens **with** substantial arguments should **not** be held subject to mandatory detention while pursuing their legal claims); Ly, 351 F.3d at 272 ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. . . The **entire** process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.) 4

---

4 No cases cited by the government establish that detainees' pursuit of legitimate legal claims and stays of removal has purposefully stymied removal efforts and thereby resulted in their "voluntary" detention. See Gov. Opp. to Pet. at 6 (Macalma's case). The majority of the cases cited by the government establish simply that under 8 U.S.C. § 1231 (a), which requires detention of certain non-citizens during the 90-day "removal Period," the "removal period" can be extended if the alien acts to prevent his own removal by failing to apply for identity documents or engaging in some similarly nefarious conduct. They do not establish that an alien who seeks judicial review and obtains a stay based on the merits of his claim, can be detained merely because he has exercised his right to judicial review. *See*, **e.g.** Lawrence v. Gonzalez, 446 F.3d 221 (1st Circuit 2006) finding that (petitioner's removal was "presumably imminent" because the current litigation had been resolved; Thelemaque v. Ashcroft, 363 F.Supp. 2d 198 (D. Conn. 2002).

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

1   Likewise, Mr. Martinez-Madera is not responsible for his continued detention, as the government insisted on
2   those other cases by saying that it is voluntary, merely because of requested stays of removal. The government
3   has also argued, disingenuously, that detainees' requests for extensions of time to file opening briefs in the
4   Ninth Circuit Court of Appeals mean they voluntarily prolong their detention by delaying their proceedings. See
5   Gov. Opp. To Pet. at 5 (in Mr. Macalma's case) But at most, these extensions (four) prolonged Mr. Macalma's
6   proceedings by all of five months, an insignificant amount of time when compared to his three year-four month
7   detention. Indeed, the <u>government</u> conveniently <u>ignores</u> that it <u>creates its own delays</u>, sometimes months at a
8   time, like in Mr. Macalma's case of a seven-month delay in the Ninth Circuit by filing motions to extend the
9   time to file administrative records and by taking close to three months to file any response to Mr. Macalma's
10   opening brief after it was filed. **See** id at Exh. 11-12, 13-14. What is more, <u>Many</u> <u>detainees</u> are <u>pro se</u>
11   throughout immigration proceedings, making their motions for extensions of time often necessary and certainly
12   not unusual nor abnormal in the least at all.
13   The government's separate argument that detainees' detention is voluntary because they can easily pursue
14   their claims from abroad, See Gov. Opp. to Pet. At 5, is equally disingenuous. There are substantial and
15   important reasons for detainees choosing to challenge removal orders rather than filing passport applications or
16   applying for certificates of citizenship with U.S. consulates in other countries. "We would be deprived of a full
17   opportunity for judicial reviews should the State Department or the Department of Homeland Security deny
18   passport applications or certificates of citizenship applications." The government cites Rusk v. Cort, 369 U.S.
19   367 (1962), for the proposition that the Secretary of State's denial of a citizenship application could be
20   reviewed under the Administrative Procedure Act (APA), <u>but that ruling was abrogated in Califano v. Sanders</u>,
21   430 U.S. 99, 105 (1977), where the Court found that "<u>the APA is not to be interpreted as an implied grant of</u>
22   <u>subject-matter jurisdiction to review agency actions,</u>" Thus, by <u>pursuing his appeals and petitions for relief</u>
23   <u>through a challenge to his removal order</u>, Mr. Martinez-Madera is both: <u>preserving and, exercising his</u>
24   <u>fundamental right to judicial review of his case</u>. Moreover, The Ninth Circuit's decision in **Nadarajah** is <u>not</u>
25   <u>limited to</u> the <u>particular statutes at issue in that case</u>. Rather, the Court held explicitly that (the general detention
26   statutes – all of the statutes applicable in cases **not** <u>involving</u> **national security concerns** – do **not** <u>authorize</u>
27   <u>detention beyond a presumptively reasonable</u> **six-month period** <u>where removal is not significantly likely to</u>
28   <u>occur in the reasonably foreseeable future</u>.) **Nadarajah**, 443 F.3d at 1078. Because Mr. Martinez-Madera's
29   removal is **not** significantly likely to occur in the reasonably foreseeable future, <u>he</u> <u>is</u> therefore <u>entitled</u> to
30   <u>immediate release from detainment</u> under **Nadaraja** and other cases mentioned above under **proper, and**
31   **carefully crafted and conditioned orders of supervision.**

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

1  Even if this Court does not order Mr. Martinez-Madera's immediate release under Nadarajah and all other
2  cases mentioned above, it must <u>order a hearing</u> at which the government must demonstrate beyond a shadow of
3  a doubt that Mr. Martinez-Madera's prolonged, lengthy and ongoing detention is justified. Such a hearing is
4  required both by the immigration laws and the Due Process Clause. As a general matter, prolonged <u>**CIVIL**</u>
5  <u>detention</u> violates the Due Process Clause unless it is accompanied by both a sufficient justification and strong
6  procedural protections. *See* Zadvydas, 533 U.S. at 691. If the immigration detention statutes are not construed
7  to authorize sufficient procedural protections, they necessarily violate due process.
8  Prior to its exhaustive consideration of the general detention statutes in Nadarajah, the Ninth Circuit in Tijani
9  v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) held that [prolonged immigration detention without a meaningful
10 custody hearing raises serious constitutional problems and, thus, is not permitted under the general detention
11 statute codified at 8 U.S.C. § 1226(c)] [5] The Ninth Circuit held that 8 U.S.C. § 1226 authorizes mandatory
12 immigration detention only insofar as removal proceedings are "expeditious." [6] Id. at 1242. Based on the
13 excessive length of the incarceration at issue in that case—over two years—the Court directed the district court
14 to grant the writ of Habeas Corpus unless the government proved at a hearing before an immigration judge that
15 the petitioner presented a sufficiently serious risk of flight or danger to the community to properly justify his
16 ongoing detention.

---

18 [5] In explaining, albeit briefly, the constitutional problem at issue, the Tijani court noted that the <u>detention at</u>
19 <u>issue was **civil** rather than criminal</u>. Tijani, 430 F.3d at 1242. The Supreme Court has made clear that <u>prolonged</u>
20 <u>civil detention violates the Due Process Clause</u> <u>unless</u> it is both "<u>limited</u> to <u>specially dangerous individuals</u> and
21 subject to strong procedural protections." Zadvydas, 533 U.S. at 691.

23 [6] In Addition to 8 U.S.C. § 1226(a)(2), is also commonly referred to as a mandatory detention provision. This
24 provision requires detention of certain non-citizens during the 90-day "removal period." Because Mr. Martinez-
25 Madera's case is pending before the 9th Circuit Court of Appeals, this provision is not applicable. Moreover, as
26 Tijani makes clear, throughout the two years period that Mr. Martinez-Madera's removal order was stayed
27 pending his Petition For Review, his detention continued to be governed by § 1226 rather than § 1231. **See** 8
28 U.S.C. § 1231 (a)(1)(B) (removal period does not commence until after expiration of a court-ordered stay);
29 Tijani, 430 F.3d at 1242 (applying § 1226(a) to a petitioner who had been ordered removed but had an appeal
30 pending in the 9th Circuit). Thus, any attempt by the government to minimize the length of Mr. Martinez-
31 Madera's mandatory detention by discounting the two years he was detained pending court of appeals review,
32 **See** (Macalma's case) Gov. Opp. to Pet. at 4-5, is wholly without merit.

Case 3:07-cv-02237-JLS-WMC   Document 1   Filed 11/26/2007   Page 13 of 19

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

Accordingly, if this Court finds that the INA does provide authority for prolonged detention pending completion of removal proceedings, such as Mr. Martinez-Madera has experienced, the Court must nonetheless order a hearing where the government will bear the burden of establishing that Mr. Martinez-Madera's detention is justified. Such a hearing is required both, by Ninth Circuit's precedent decisions and by the Due Process Clause. Moreover, this hearing must necessarily assess the validity of his continued detention based on current facts, and not simply on his limited, past "criminal" record. Indeed, "[t]o presume dangerousness to the community and risk of flight based solely on past [criminal] record does not satisfy due process." **Ngo v. INS**, 192 F.3d 390, 398-99 (3d Cir. 1999). This hearing must instead assess 1) the existing length of Mr. Martinez-Madera's detention; 2) the unlikelihood of his immigration case being resolved soon; and 3) his **a)** risk of flight and **b)** actual dangerousness to the community. Mr. Martines-Madera has been detained for more than two years and he has not had a hearing of any kind, let alone a constitutionally required, adequate hearing.

That the government afforded Mr. Martinez-Madera two (2) paper custody reviews in his going on three year incarceration is insufficient to justify his continued prolonged detention. These Detainees' <u>cursory custody reviews, resulting in rubber-stamp decisions to continue detentions</u> for inexplicable reasons, <u>fall far short</u> of the <u>strong procedural protections required for prolonged **civil** detentions</u>. In Denying Mr. Martinez-Madera's release pursuant to the two paper custody reviews, the government relied almost exclusively on his very limited criminal history, a paradigmatically insufficient basis for such detention. Compare with Ngo, 192 F.3d at 398 ("Due Process is not satisfied, however, by rubber-stamp denials based on temporally distant offenses."). Review consisted solely of an insufficient blanket assertion that ICE considered Mr. Martinez-Madera a """flight risk' due to the probability of [his] removal . . . in the foreseeable future."" Also compare with the Macalma case at Exhibit 3 (his) a one-sentence decision to continue detention without elaboration or explanation, when a civilian person's constitutionally guaranteed liberty is at stake?. compare with Ngo, 192 F.3d at 198 ("the Due Process due, **even** to excludable aliens requires an opportunity for an evaluation of the individual's threat to the community and his risk of flight."). The 49-page packet he sent ICE ? seems they did not even look at it, and if they did seems they did not even read it much less consider it to release him.

Fundamentally, these cursory reviews and cursory decisions by ICE to continue detention do not allow for live testimony or even an in-person interview and they place the burden of proof on detainees. In all relevant respects, they fall far short of the type of bond required by Due Process and to which Mr. Martinez-Madera is entitled. **See** Tijani, 430 F.3d at 1242. Zadvydas, 533 U.S. at 690. where it states "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—<u>lies at the **heart** of the **liberty** that [the Due Process Clause] protects</u>." For this reason, detention must always be reasonable, in

JuanJose Martinez-Madera A 14-647-093 Detained at ICEl-El centro Processing Center 1115 Imperial Ave. El Centro, California 92243-1739

1 relation to its intended purpose. **Jackson v. Indiana**, 406 U.S. 715, 738 (1972). In the immigration context, the
2 purpose of detention is to effect the non-citizen's deportation in the event that removal proceedings conclude in
3 the government's favor. **Zadvydas**, 533 U.S. at 699 holding that ("the statute"s basic purpose" is "to assure the
4 alien's presence at the moment of removal"). **See** also Demore, 538 U.S. at 527-29 (applying "reasonable
5 relation" test). Under the circumstances of this and other similar cases of prolonged detention, "there exists a
6 point at which the length of detention becomes so egregious that it can no longer be said to be 'reasonably
7 related' to an alien's removal." Tijani, 430 F.3d at 1249 (Tashima, J., concurring) (quoting Demore, 538 U.S. at
8 532 (Kennedy, J., Concurring). See also Nadarajah, 443 F.3d at 1080 ("A detention of nearly five years—ten
9 times the amount of time the Supreme Court has considered acceptable absent a special showing—<u>is plainly
10 unreasonable under any measure</u>."). It is so here, when, as in present case, a <u>civilian, legal-permanent-resident
11 has been detained for more than three years outside of any kind of a criminal process</u> (and where, contrary to
12 the government's unfounded suggestions, See Gov. Opp. To Pet. at 6, detention is not the result of frivolous
13 appeals), the detention then not only loses its connection with the sole legitimate immigration purpose of
14 carrying out a removal—it becomes **punitive in a civil case**. <u>The Due Process Clause of the Fifth Amendment
15 forbids such excessive and abusive incarceration of civil, legal, permanent, residents in removal proceedings</u>.
16                                               **PETITIONER'S STATEMENT**
17             In a nutshell – why I am harmless, not a danger to the community nor a flight risk:
18     I have always shown-up for my court appointments even at the risk of losing my job because of abscentiism
19 also, ICE with their stubbornness in refusing to let people out and vengefully and punitively keeping them
20 incarcerated are saying that all people are rigid, unmoving, incapable of change which is not true because
21 people, just like life are flexible and fluid, in a constant state of flux. People evolve and change and **mature**.
22 Time itself can make a person mature along with situations, circumstances and events like education,
23 parenthood, childbirth, religion, aging, etc, etc. myself ? I am just a worker, a Christian that means well for
24 everyone and harbors no ill-will to no one no matter what because I love life and I truly. . . love my neighbor.
25     I am just a worker, just a regular person, a very simple man; a trustworthy, honest (sometimes brutally
26 honest), and a down to earth good man. I don't smoke, I don't drink, I don't do drugs but have kept some only
27 to test my partner and see what kind of a woman/human being she was. I am not a gang member and do not
28 even hang around these type of individuals that are into these things, I don't say bad words out of context even
29 though I know them all.
30     I am and have always been into  G O D  into life, into health, family, work, studying, sports, nutrition,
31 friendship, exercise, helping others, and into progress (family, personal, group, and community) by volunteering

1  some of my time, energy and efforts into helping others. I have never had any problem with anyone in my life
2  until I met my 2 wives which took advantage of me for being too nice and a Christian.
3      Some time ago I made a decision to work really hard to become a millionaire to get my whole family out of
4  deep poverty which is where we all have dwelled all our lives. Working like a slave for years for this purpose, I
5  did not have time for romance and found myself at the age of 35 very lonely and with a very strong repressed
6  father instinct and craving a family of my own. My first son w/ my first wife was born when I was 36. I was 40
7  years old when my second and last son w/my second wife was born.
8      My first wife treated me like dirt, I was a <u>battered husband</u>. I took it all and didn't complain until the end nor
9  I called the police; for a man in this country, these things are not even taken seriously; a man don't complain
10 about these things, we never report them. She called the police on me and with her gossipy friends' help
11 accused me of things I did not do to win custody of our son. I was arrested for those things and I tried to use a
12 sharp and stupid mouth to get justice because I am laws and court proceedings-ignorant and poor; even lawyers
13 took advantage of me instead of helping me, one only took my money, he saw that I was sooo dumb and naive.
14 The Public Defender was no help either like in almost every case.

**CRISES:**

15
16  1) I broke my leg in twelve different places playing organized sports (soccer)
17  2) They found bone cancer in my R/knee. I've had 7 knee surgeries since, and in pain about 90% of the time
18  3) I went through a divorce from my first wife
19  4) Because of their lies (her and her friends), my legal-ignorance, being poor and my stupid (sharp mouth) I
20     lost custody of my son, was arrested and got a bad record
21  5) I lost my home with $ 64,000.oo dollars equity because of an error between 2 child-support agencies in 2
22     different counties that they did not want to hear/find-out about or fix.
23  6) I lost my "good job" of 17 years. The Cold-War w/Russia ended, the Defense Industry collapsed,
24     hundreds of thousands of us got laid-off at the same time and I couldn't find another reasonable paying
25     job. I was the head of household and was under a lot of stress because I couldn't pay our monthly bills
26     with a net monthly paycheck of $ 500,oo/month after child-support deductions, couldn't even pay the rent
27     in a studio when I had to vacate my house when I lost it. I was earning $ 900,oo dollars/month and while
28     one child support office was still deducting $ 400,oo dollars/month from my paycheck the same way they
29     did from my other job before I got laid-off, the other child-support office was charging me the same
30     amount per month just like before, saying I wasn't contributing even though I was always current.
31  7) I lost my business that I was trying to build-up, a Mexican Food restaurant (Amigos Mexican Food) with
32     $ 90,000.oo dollars worth of equipment alone. Lost also because of the child-support errors.
33 <u>Because of all these crises I was going through, I was already on the verge of a nervous collapse.</u>
34
35     My second wife and I were already negotiating our divorce in amicable terms when I was going through
36 these 7 crises almost simultaneously which caused me to have a nervous breakdown at the moment that she
37 pushed me almost knocking me out of my shoes, almost making me fall down; at that moment I lost my grip on
38 reality, I was barely hanging-on to my sanity during this time and tried to commit myself three (3) different

1  times at 3 different government clinics but they wouldn't admit me because I did not have insurance anymore
2  even though I had worked and paid taxes for a lot of years but had lost my insurance when I got laid-off.
3    Those sitting in judgment decided to charge me w/ premeditated murder by exaggerating and lying. My
4  charges, in all fairness and in the name of true justice should have been ones with no immigration
5  consequences. I told the truth and was not believed, those sitting in judgment over-reacted, exaggerated, and
6  lied and were believed, tricked me into a deal and a confession and now find myself in deportation proceedings.
7    I am just like any other human being, I also get angry and impatient sometimes, just like anybody else; but I
8  don't go around beating people up, that is not my nature nor who I am. My complete record reflects that. It also
9  shows that since I am not a criminal something must have been/gone wrong and somebody should have looked
10 at my case closely but it did not happen and, sad to say, those things do not happen to disadvantaged people like
11 myself. The Justice System has failed the most defenseless ones and that is where I want to make a difference if
12 present motion is granted, to try to legally and peacefully change a system that needs to be more humane (there
13 are a lot of innocent, ignorant, simple, poor and disadvantaged individuals going through it now), instead of the
14 inflexible, vengeful, and very punitive places operating now where, a lot of human potential goes to waste
15 when, with a little bit of work we can make the system true corrections and rehabilitations places in there and
16 by using their time, energy and efforts those places can turn out hard-working, <u>tax-paying</u> good citizens for the
17 communities' benefit.

## CONCLUSION

18    For the foregoing reasons, the government's extraordinarily prolonged detention of Mr. Martinez-Madera,
19 where he has not unreasonably sought to delay his removal proceedings, **<u>violates</u>** the INA and the Due Process
20 Clause of the Fifth Amendment. Therefore, Petitioner respectfully prays to this Court to grant him this petition
21 for Writ of Habeas Corpus and order his immediate release under appropriate conditions of supervision. In the
22 alternative, given that the government has detained Mr. Martinez-Madera for a prolonged period of time
23 without ever holding a hearing to determine whether his inordinate detention is justified, Mr. Martinez-Madera
24 respectfully requests this honorable court for an adequate, constitutionally entitled hearing before an
25 immigration judge where the government bears the heavy burden of proving that any continued detention—now
26 going on three years—is really justified, under the immigration laws and the Constitution of the United States
27 of America. I thank you very much for any help provided.        Respectfully Submitted

28                     *Tuesday*  (In Pro Se)              JuanJose Martinez-Madera
29 Executed on this date: *November 20, 07*
30                                  A 14-647-093    Petitioner's Signature

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN U.S. BICE CUSTODY**
(Fed. R. Civ. P. 5; U.S.C. § 1746)

I, JuanJose Martinez-Madera A 14-647-093 declare that:

I am a party to this action. I am being detained by **BICE** and am a resident in one of their detention facilities in the Imperial County in the State of California at the following Address:

> ICE El Centro Processing Center
> 1115 North Imperial Avenue
> El Centro, California 92243-1739

I also state that: On this day _November 20, 07_, I served by Certified First-Class United States Mail a true copy of the following attached documents: [1]

1. Petition for a Writ of Habeas Corpus
2. Motion for Appointment of Counsel
3. Motion and Declaration to Request to Proceed in Forma Pauperis
4. Fee Waiver Request
5. The $ 5,oo (five dollars) Habeas Corpus filing fees (to the United States District Court)
6. This Proof of Service by Mail  . . . to the following addresses:

1. United States District Court
   Clerk's Office
   880 Front Street, Suite 4290
   San Diego, California  92101-8900

2. U.S. - Trial Unit Attorney - Unit/EL
   1115 N. Imperial Ave.
   El Centro, California  92243-1739

3. U.S. - BICE – District Counsel
   2409 LA Brucherie Road
   Imperial, California  92251

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my ability, knowledge and skills.       Respectfully Submitted

                                          A 14-647-093         JuanJose Martinez-Madera
Executed on this date: _tuesday November 20, 2007_

_____                                         Petitioner's Signature

---

[1] This Pro-Se filing is deemed filed upon delivery to prison authorities. See Fed. R. App. 25 (a)(c). Houston v. Lack, 487 U.S. 266, 101 L. Ed. 245, 108, S. Ct. 2379 at 274, 275 (1988).

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED NOV 2 6 2007 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY ___ DEPUTY**

**I (a) PLAINTIFFS**

JuanJose Martinez-Madera

**DEFENDANTS**

Chertoff,

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Imperial
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** ___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

JuanJose Martinez-Madera
1115 Imperial Avenue
El Centro, CA 92243
A 14-647-093

**ATTORNEYS (IF KNOWN)**

'07CV 2237 JLS WMc

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

28 USC 2241

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
**DEMAND $** ___
Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): **JUDGE** ___ **Docket Number** ___

**DATE** 11/26/2007

PAID $5 - 11/27/07 BY R. (RT# 144815

~~SIGNATURE OF ATTORNEY OF RECORD~~


**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

\# 144815    - BH

November 27, 2007
09:37:44

Habeas Corpus
USAO #.: 07CV2237 HABEAS FILING
Judge..: JANIS L. SANMARTINO
Amount.:                    $5.00 MO
Check#.: R100984316818

Total-> $5.00

FROM: HABEAS FILING
      MARTINEZ-MADERA V. CHERTOFF ET