# EXHIBIT A

Prieto-Romero v. Clark, --- F.3d ----, 2008 WL 2853396 (9th Cir. July 25, 2008)

**Jose Manuel PRIETO-ROMERO,
Petitioner-Appellant,
v.
A. Neil CLARK, Officer in Charge, Detention and Removal Operations: Northwest Detention Center; Michael Chertoff, Secretary of Homeland Security; Michael B. Mukasey, Attorney General of the United States; and any and all other persons exercising direct legal custody over the petitioner, Respondents-Appellees.**

Oral argument in this appeal was consolidated with Casas-Castrillon v. Lockyer, No. 07-56261, Diouf v. Mukasey, No. 07-55337, and Seoeth v. Mukasey, Nos. 07-55549 & 07-56403.

James Fife, Federal Public Defenders of San Diego, Inc., San Diego, California, argued for the petitioner-appellant; and Thomas H. Dupree, Department of Justice, Civil Division/Appellate Staff, Washington, DC, argued for the respondents-appellees in Casas-Castrillon.

Ahilan T. Arulanantham, ACLU Foundation of Southern California, Los Angeles, California, argued for the petitioner-appellee; and Thomas H. Dupree, Department of Justice, Civil Division/Appellate Staff, Washington, DC, argued for the respondents-appellants in Diouf.

Judy Robinovitz, ACLU Foundation, New York, New York, argued for the petitioner-appellee; and Gjon Juncaj, Department of Justice, Office of Immigration Litigation, Washington, DC, argued for the respondents- appellants in Soeoth.

Matt Adams (argued), Northwest Immigrant Rights Project, Seattle, WA, for the petitioner-appellant.

Gjon Juncaj (argued), Department of Justice, Office of Immigration Litigation, Washington, DC; Jeffrey C. Sullivan, United States Attorney, Priscilla To-Yin Chan, Assistant United States Attorney, Western District of Washington, Seattle, WA, for the respondents-appellees.

Judy Rabinovitz, ACLU Foundation, New York, NY; Cecillia D. Wang, ACLU Foundation, San Francisco, CA; Ahilan T. Arulanantham, Ranjana Natarajan, ACLU Foundation of Southern California, Los Angeles, CA; Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic, Stanford, CA, for amicus curiae American Civil Liberties Foundation and American Civil Liberties Union Foundation of Southern California.

Rachael Keast, Florence Immigrant and Refugee Rights Project, Florence, AZ; Nancy Morawetz, Heidi Altman, Mandy Hu, Washington Square Legal Services, Inc., New York, NY, for amicus curiae Florence Immigrant and Refugee Rights Project, et al.

Appeal from the United States District Court for the Western District of Washington; Robert S. Lasnik, District Judge, Presiding. D.C. No. CV-06-00786-RSL.

Before Jerome Farris, Raymond C. Fisher and Milan D. Smith, Jr., Circuit Judges.

**OPINION**

FISHER, Circuit Judge:

*1 This appeal from the district court's denial of Jose Manuel Prieto-Romero's habeas corpus petition concerns whether the government may continue to detain a legal permanent resident of the United States for over three years while he seeks administrative and judicial review of his removal order. We hold that this continued civil detention, although lengthy, is authorized by statute, and so we affirm the district court.

The facts of this case are straightforward and not disputed by either party. Prieto-Romero, a native and citizen of Mexico, has been a legal permanent resident of the United States since 1981. He was served with a notice to appear and detained by the Department of Homeland Security in February 2005. An immigration judge ("IJ") found that Prieto-Romero was a removable alien because he had been convicted of an aggravated felony in 1989. See 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for removal of an alien convicted of an aggravated felony, as defined by § 1101(a)(43)(A)).FN1 Prieto-Romero appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"), which affirmed the removal order in September 2005. He then filed a timely petition for review in the Ninth Circuit Court of Appeals. We entered a stay of removal pending consideration of his petition for review, which remains unresolved as of the filing of this opinion. See § 1252(b).

*FN1. Hereinafter, all citations are to Title 8 of the United States Code unless otherwise noted.*

From February 2005 until the present, Prieto-Romero has remained in the continuous custody of the federal government. Concurrent with the government's issuance of the notice to appear, the Attorney General determined that Prieto-Romero should be placed in detention. Pursuant to Department of Homeland Security ("DHS") regulations, Prieto-Romero requested and received a bond redetermination hearing in May 2005 before an IJ, who declined to grant bond. In July 2005, after Prieto-Romero successfully appealed the IJ's ruling to the BIA, the IJ again denied bond, finding that

Prieto-Romero "constitutes a flight risk." Prieto-Romero appealed once more to the BIA, but the BIA affirmed his removal order before it had a chance to reach the merits of his bond appeal. See 8 C.F.R. § 1236.1(d)(3). Between February 2006 and May 2006, DHS officials conducted a file custody review and concluded that Prieto-Romero should remain in detention "pending the result of [his petition for review] before the Ninth Circuit Court of Appeals."

Prieto-Romero filed the instant petition for habeas corpus under 28 U.S.C. § 2241 in June 2006. At that time, his administrative proceedings before the IJ and BIA had been complete for approximately one year. In his petition for habeas corpus, Prieto-Romero argued that his prolonged detention violates both his substantive and procedural due process rights and is not authorized by any statute. In February 2007, the district court ordered DHS to hold an additional bond hearing for Prieto-Romero where he would bear the burden of proof; at the hearing, the IJ was to make an "individualized determination as to whether petitioner is a flight risk or a danger to the community,""consider all the factors relevant to discretionary detention under [§ 1226(a) ]" and, in so doing, "consider all the relevant factors provided in 8 C.F.R. § 241.4(f)."FN2 In this third bond hearing, the IJ set bond at $15,000, an amount Prieto-Romero has been unable to pay. The district court thereafter denied Prieto-Romero's petition for habeas corpus and he has now appealed that order. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

*FN2.8 C.F.R. § 241.4(f) lists factors that DHS officials should "weigh[ ] in considering whether to recommend further detention or release" of an alien subject to detention under § 1231(a)(6), not one subject to detention under § 1226(a).See infra note 10 and accompanying text.*

*2 In his petition, Prieto-Romero principally argues that the Attorney General does not currently have the authority to detain him because his detention has become prolonged and indefinite and is therefore not authorized by any statute. See Zadvydas v. Davis, 533 U.S. 678, 696, 699-700 (2001). To determine whether Congress has authorized his detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General. This requires that we locate Prieto-Romero within the complex statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Naturalization Act, codified at 8 U.S.C. §§ 1226 and 1231. We hold, first, that the Attorney General's authority to detain aliens such as Prieto-Romero is found in § 1226(a). Second, we hold that Prieto-Romero's detention remains authorized under this statute because his repatriation to Mexico is practically attainable in the event his petition for review of his administratively final order of removal is ultimately denied. Lastly, we reject Prieto-Romero's suggestion that any purported procedural defects in his bond hearings violated his due process rights. Accordingly, we affirm the district court.

I.

Prieto-Romero and the government dispute whether the Attorney General's authority to detain Prieto-Romero derives from § 1226(a), under which the Attorney General has the discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States," or § 1231(a)(2) and (a)(6), under which the Attorney General has the authority to detain aliens "during" and "beyond" their "removal period." Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention. We hold that the Attorney General's statutory authority to detain Prieto-Romero, whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a).

A.

The parties agree that § 1226(a) provided the statutory authority for the Attorney General's initial detention of Prieto-Romero.FN3The Attorney General may issue a warrant of arrest concurrently with the notice to appear. See§ 1226(a); see also 8 C.F.R. § 236.1(a). After an alien is detained, the DHS district director makes an initial custody determination and may allow the alien's release on bond. See 8 C.F.R. § 236.1(d). If the alien objects to the director's bond determination, he may request a bond redetermination hearing before an IJ at any time before the issuance of an administratively final order of removal. See id.; see also 8 C.F.R. § 1003.19(c). The alien may appeal the IJ's bond decision to the BIA, see 8 C.F.R. § 236.1(d)(3), but discretionary decisions granting or denying bond are not subject to judicial review, see§ 1226(e). Before Prieto-Romero filed his habeas corpus petition, he had received two bond hearings before an IJ under this regime. The BIA vacated the IJ's first denial of bond because the IJ erroneously placed sole reliance on a presumption that aggravated felons are unsuitable for bond. At the second hearing, the IJ again denied Prieto-Romero release on bond, finding him a flight risk. Prieto-Romero concedes that he was subject to detention under § 1226(a) during this process while the IJ and BIA were considering the merits of his removal

order.

*FN3. Ordinarily, the Attorney General does not have the authority to release on bond aliens who are allegedly removable for having committed aggravated felonies. See § 1226(c)(1)(B). Although Prieto-Romero was charged with being removable as an aggravated felon, he was never subject to mandatory detention under § 1226(c) because he "was released from his criminal custody on or before October 8, 1998," and therefore "eligible for consideration for bond under the general bond provisions of" § 1226(a). In re Adeniji, 22 I. & N. Dec. 1102, 1116 (BIA 1999). Briefly, § 303(b)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009, 3009-586, specified that the "provisions of § 1226(c) shall apply to individuals released after such [transition] periods," as might be declared by the Attorney General. An alien, like Prieto-Romero, who was "released from his non-Service custodial setting (i.e., from criminal custody)" before October 8, 1998, the date the transition period ended, was not "subject to mandatory detention under [§ 1226(c) ]." Id. at 1107, 1111.*

**B.**

*3 Prieto-Romero contests the legality of his present detention, however, now that the BIA has affirmed his removal order and his petition for review is pending before the court of appeals pursuant to § 1252(a)(1). We must therefore decide what statutory authority governs an alien's detention at this stage of his legal challenge to his removal. As Prieto-Romero's case demonstrates, an alien whose removal order is administratively final is not necessarily immediately deported. When an alien files a petition for review of an administratively final order of removal, we have the authority to enter a judicial stay of removal. See § 1252(b)(3)(B). Approximately two of Prieto-Romero's three years in federal custody have passed while he has been awaiting a decision of our court on his petition for review.

The statutory scheme governing the detention of such aliens is not a model of clarity. The government argues that aliens such as Prieto-Romero are detained under the Attorney General's grant of authority in § 1231(a). Prieto-Romero responds that aliens whose judicial review is ongoing have not yet entered their "removal period," and hence cannot be detained under § 1231(a), which provides for detention only "during" and "beyond" the "removal period." The distinction has real consequences for the alien, because detention under § 1231(a)(2), for example, is mandatory but limited to a set period of time, whereas detention under § 1226(a) is discretionary and the necessity of detention can be reviewed by an IJ and the BIA.FN4 We agree with Prieto-Romero and hold that § 1231(a) does not provide authority to detain an alien whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of his petition for review. Such aliens may be detained, however, pursuant to § 1226(a), which allows the Attorney General to detain any alien "pending a decision on whether the alien is to be removed from the United States."

*FN4. Detention "during" the removal period is mandatory. See § 1231(a)(2). Detention "beyond" the removal period is discretionary and subject only to an administrative post-order custody review process. See § 1231(a)(6); 8 C.F.R. § 241.4. The government has not specified whether it believes § 1231(a)(2) or 1231(a)(6) is applicable to aliens in Prieto-Romero's position, instead referring generally to its " § 1231(a)" authority. In any event, an alien detained under either provision of § 1231(a), unlike an alien detained under § 1226(a), cannot obtain a bond hearing before an IJ. Cf.8 C.F.R. § 236.1(c)(8).*

Our conclusion follows from the plain language of the statute. Section 1231(a) authorizes detention in only two circumstances. "During the removal period," the Attorney General "shall" detain the alien. See § 1231(a)(2) (emphasis added). "[B]eyond the removal period," the Attorney General "may" detain an alien who falls within one of three categories specified by the statute. See § 1231(a)(6) (emphasis added). The "removal period" itself ordinarily lasts 90 days, but does not begin until the latest of the following:
(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
§ 1231(a)(1)(B) (emphasis added). The statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal.FN5 See § 1231(a)(1)(B)(ii); cf. Andrade v. Gonzales, 459 F.3d 538, 543 (5th Cir.2006) (explaining that " § 1231(a)(1)(B)(ii) only 2applies to those cases in which [the court of appeals] also issued a stay of removal"). Because § 1231(a) authorizes detention only "[d]uring the removal period," § 1231(a)(2), and "beyond the removal period," § 1231(a)(6), it clearly does not provide any authority before the removal period. Therefore, the plain language of § 1231(a) provides no authority to detain aliens such as Prieto-Romero whose removal order is administratively-but not judicially-final. See Wang v. Ashcroft, 320 F.3d 130, 147 (2d Cir.2003); Bejjani v.

INS, 271 F.3d 670, 689 (6th Cir.2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006).

*FN5. The provision is inartfully drafted, as one cannot say when the "latest" of the three events will occur until those events have either taken place or it is known that they can no longer ever take place. Consequently, the time between an alien's filing of a petition for review and this court's issuance of a stay of removal falls within a lacuna in the statutory text. We consider it unlikely that Congress would have intended that DHS's removal efforts begin as soon as an alien's removal order is administratively final, see§ 1231(a)(1)(B)(i), terminate when this court stays removal, see§ 1231(a)(1)(B)(ii), and begin anew if and when we finally deny the petition for review. The more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review. See Mariscal-Sandoval v. Ashcroft, 370 F.3d 851, 856 (9th Cir.2004) (explaining that we would vacate stay of removal only upon issuance of mandate because the " 'finality of an appellate order hinges on the mandate' ") (quoting United States v. Foumai, 910 F.2d 617, 620 (9th Cir.1990)); De Leon v. INS, 115 F.3d 643, 644 (9th Cir.1997) (adopting rule that "filing of a motion for stay ... will stay a petitioner's deportation temporarily until the court rules on the stay motion"); see also 9th Cir. General Order 6.4(c).*

*4 The government attempts to elide the obvious implication of § 1231(a)'s silence on detention authority before the removal period has begun-that no such authority exists-by pointing to § 1252(b)(8), which provides:

This subsection [establishing a petition for review as the exclusive means for judicial review of an order of removal] ... does not prevent the Attorney General, after a final order of removal has been issued, from detaining the alien under section 1231(a) of this title....

(Emphasis added.) We reject the government's assertion that the statutory cross-reference to § 1231(a) implicitly authorizes the detention of any alien whose removal order is administratively final, even when the alien is not subject to the Attorney General's detention authority "[d]uring" and "beyond" the removal period. Cf.§ 1231(a)(2), (a)(6).Section 1252(b)(8) merely clarifies that a pending petition for review does not, by itself, detract from the detention authority otherwise conferred by § 1231(a)(2) and (a)(6). For instance, when an alien files a petition for review of his removal order and we decline to grant a stay of removal, see§ 1252(b)(3)(B), the removal period commences immediately, see§ 1231(a)(1)(B)(ii), "[d]uring" which time the alien may be detained under § 1231(a)(2). When the court of appeals has issued a stay, however, the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review. See§ 1231(a)(1)(B)(ii).FN6

*FN6. The beginning of the removal period is not delayed by every judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals. See§§ 1231(a)(1)(B)(ii), 1232(a)(5). Therefore, the entry of a stay of removal for any other reason-for example, a stay entered while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen-does not prevent the removal period from beginning.*

The government also urges that § 1231(a)(1)(C), which "extend[s]" the "removal period" beyond its presumptive 90-day limit if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal," can be construed to authorize Prieto-Romero's detention. We disagree. Rather than functioning as an independent source of detention authority, § 1231(a)(1)(C) merely authorizes the government to continue detaining an alien "[d]uring the removal period." See§ 1231(a)(2). Consequently, § 1231(a)(1)(C) cannot be invoked to justify the detention of an alien whose removal period has not yet begun. Moreover, we are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal."See§ 1231(a)(1)(C). We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. See Lema v. INS, 341 F.3d 853, 856 (9th Cir.2003) (alien refused to "cooperate fully and honestly with officials to secure travel documents"); Pelich v. INS, 329 F.3d 1057, 1059 (9th Cir.2003) (alien refused to fill out passport application). Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.FN7

*FN7. Our conclusion is bolstered by a comparison between the language of § 1231(a)(1)(C) & § 1324d(a), which provides for penalties of up to $500 a day for "[a]ny alien subject to a final order of removal who ...conspires to or takes any action designed to prevent... the alien's departure."(Emphasis added.) Because it is a "well-established principle of statutory construction that 'the same words or phrases are presumed to have the same meaning when used in different parts of a statute,'" United States v. Various Slot Machines on Guam, 658 F.2d 697, 703 n. 11 (9th Cir.1981) (internal citation omitted), the civil penalty statute and § 1231(a)(1)(C) are most naturally interpreted to reach the same behavior. The government's preferred interpretation of § 1231(a)(1)(C)' s "conspires or acts to prevent" language therefore raises serious equal protection and due process concerns because it would effectively condition an alien's right to judicial review of his*

*removal order on his ability to pay the civil penalty imposed by § 1324d. See M.L.B. v. S.L.J., 519 U.S. 102, 120-24 (1996). We decline to endorse it.*

\*5 The government's remaining arguments are unpersuasive. It urges us to follow the Eleventh Circuit's statement in De La Teja v. United States, 321 F.3d 1357, 1363 (2003), that § 1231(a)"controls the detention and removal of an alien subject to a final order of removal."De La Teja, however, does not support the argument the government advances here. There, a habeas corpus petition was brought by an alien who had not appealed his removal order to the BIA or to the court of appeals. See id. at 1365.Because the IJ had issued a removal order but the alien's time for seeking review of that order had expired, the Eleventh Circuit correctly concluded that the alien's removal period had begun, providing the necessary prerequisite for detention authority under § 1231(a)(2) and (a)(6).See§ 1231(a)(1)(B)(i)-(ii); 8 C.F.R. § 241.1(b).De La Teja does not support the government's argument that aliens who do have petitions for review pending before the court of appeals may be detained under the authority granted by § 1231(a).

We also reject the suggestion that we should accord Chevron deference to the BIA's construction of § 1231. See Chevron, U.S.A ., Inc. v. NRDC, 467 U.S. 837 (1984). In In re Joseph, 22 I. & N. Dec. 660, 668 (BIA 1999), the BIA stated without analysis that § 1231"controls the detention and release of aliens after an administratively final order."The BIA had no occasion in that case to consider whether the filing of a timely petition for review and the entering of a stay of removal delays the onset of § 1231(a) authority. In any event, Congress has "directly spoken to the precise question at issue" and its intent is readily ascertainable using the traditional tools of statutory interpretation. Chevron, 467 U.S. at 842-43 & n. 9;see FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 131-33 (2000). We will not defer to the BIA when its construction of a statute defies its"plain and sensible meaning." Kankamalage v. INS, 335 F.3d 858, 862 (9th Cir.2003). As a matter of text and of logic, § 1231(a) does not provide detention authority over an alien who has been granted a stay of removal pending a court of appeals' resolution of his petition for review of his removal order.

Although § 1231(a) does not authorize the Attorney General to detain aliens such as Prieto-Romero, the Attorney General still retains discretionary detention authority under § 1226(a), which permits detention "pending a decision on whether the alien is to be removed from the United States."It is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate"decision" as to whether an alien "is to be removed." Because Prieto-Romero filed a petition for review and our court entered a stay, his detention is governed by § 1226(a); only if we enter a final order denying his petition for review will the statutory source of the Attorney General's detention authority shift from § 1226(a) to § 1231(a).

## II.

\*6 Having determined that the government's authority to detain Prieto-Romero must derive from § 1226(a), we now turn to the question of whether Prieto-Romero is entitled to habeas corpus relief.

### A.

Section 1226(a) on its face authorizes the detention of aliens during the removal order review process. Prieto-Romero contends, however, that Congress did not intend to authorize prolonged and indefinite detention under that statute, and therefore that the principle of constitutional avoidance requires us to read an implicit limitation into the Attorney General's detention authority. Prieto-Romero's more than three-year detention certainly qualifies as prolonged by any measure. We conclude, however, that it is not an indefinite one. We hold that he faces a significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administratively final removal order proves unsuccessful. Therefore, his continued detention remains statutorily authorized by § 1226(a).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court considered a challenge to the prolonged detention of two aliens who were being held in post-removal period detention at the discretion of the Attorney General under § 1231(a)(6). These aliens had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country. See id. at 684-86.Acknowledging that a statute permitting the indefinite detention of aliens would"raise a serious constitutional problem," the Court concluded that Congress had not expressly authorized the continued detention of aliens beyond a period reasonably necessary to secure the alien's removal from the country. Id. at 690, 699-700.Thus, the Court held that after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was "good reason to believe

there is no significant likelihood of removal in the reasonably foreseeable future."Id. at 701.

Prieto-Romero argues that Zadvydas squarely controls his case, because Congress could not have authorized his three-year detention under any immigration statute. We partly agree: that an alien is being held under § 1226(a), and not § 1231(a)(6), does not render Zadvydas inapplicable.Zadvydas held that § 1231(a)(6) did not contain any clear "indication of congressional intent to grant the Attorney General the power" to indefinitely detain. Id. at 697.It would be incongruous for us to conclude, in the absence of clear evidence, that Congress intended other detention statutes to authorize the indefinite detention of aliens, where such detention would clearly pose the same constitutional concerns.FN8Therefore, without clear congressional direction to the contrary, we conclude that § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention. Consistent with Zadvydas, we construe the Attorney General's detention authority under § 1226(a) as limited to the "period reasonably necessary to bring about [an] alien's removal from the United States," even if continued detention in any particular litigant's case would not pose a constitutional problem. Id. at 689;see also Clark v. Martinez, 543 U.S. 371, 381 (2005).

*FN8.See, e.g., Demore v. Kim, 538 U.S. 510, 527-29 (2003) (rejecting Zadvydas challenge to detention under § 1226(c) because detention during removal proceedings facilitated removal and was of a short and definite duration, not "indefinite" or "potentially permanent"); Nadarajah v. Gonzales, 443 F.3d 1069, 1076-77 (9th Cir.2006) (reading Zadvydas statutory limitation into 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A)); Khotesouvan v. Morones, 386 F.3d 1298, 1301 (9th Cir.2004) (rejecting Zadvydas challenge to detention under § 1231(a)(2), where aliens had filed "habeas petitions during the 90-day removal period").*

*7 We nonetheless reject Prieto-Romero's bid for habeas relief because, as the government forcefully argues, Prieto-Romero's detention continues to be authorized by § 1226(a), even as interpreted to avoid the constitutional problem of indefinite detention recognized by Zadvydas.Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a "removable-but-unremovable limbo," as the petitioners in Zadvydas were. See Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 347 (2005). Here there is no evidence that Prieto-Romero is unremovable because the destination country will not accept him or his removal is barred by our own laws. Cf. Zadvydas, 533 U.S. at 697. To the contrary, the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete. Prieto-Romero does not dispute this evidence, but urges us to conclude that his detention is statutorily unauthorized under Zadvydas because the government cannot demonstrate to any degree of certainty when Prieto-Romero's judicial review will end. Therefore, he argues, his ultimate deportation is a similarly "unforeseeable" event, and his detention likewise indefinite.

It is true that Prieto-Romero's detention lacks a certain end date, but this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in Zadvydas.The Court emphasized that the "basic purpose" of the immigration detention is "assuring the alien's presence at removal" and concluded that this purpose was not served by the continued detention of aliens whose removal was not "reasonably foreseeable." Id. at 699.Removal was not reasonably foreseeable in Zadvydas because no country would accept the deportees, or the United States lacked an extradition treaty with their receiving countries. Similarly, in Clark, an alien's removal to Cuba was not reasonably foreseeable when the government conceded"that it is no longer even involved in repatriation negotiations with Cuba." See543 U.S. at 386. In both cases, the Court recognized that the government's purported interest in detaining an alien was severely diminished when there was no significant likelihood that the alien could be removed. See Demore, 538 U.S. at 527 & n. 10 (observing that detentions at issue in Zadvydas did not serve a feasible immigration purpose). The "indefinite and potentially permanent" civil detention of such an alien would clearly pose serious substantive due process concerns. See Zadvydas, 533 U.S. at 696. Because Congress did not clearly intend "to authorize long-term detention of unremovable aliens," however, the Court held that this constitutional threat could be avoided by construing the statute as not authorizing detention once removal is no longer reasonably foreseeable.Id. at 697-99.

*8 We similarly relied on the likely impossibility of removal in Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir.2006), where we held that an alien's continued detention was not authorized by statute. In Nadarajah, the BIA had "awarded [Nadarajah] asylum twice, as well as protection under the Convention Against Torture," and yet his detention continued for over five years while the government appealed the outcome of these agency proceedings.Id. at 1071, 1081.We held that Nadarajah had successfully demonstrated that there was no significant likelihood of his removal in the

reasonably foreseeable future, because as a result of the asylum and CAT findings, "the government is not entitled to remove Nadarajah to Sri Lanka, and no other country has been identified to which Nadarajah might be removed," thus forming a "powerful indication of the improbability of his foreseeable removal." Id. at 1081-82. Nadarajah, like Zadvydas and Clark, thus involved the detention of an alien whom the government could not lawfully remove.

Prieto-Romero urges us to read Nadarajah to mean that an alien's removal is no longer "reasonably foreseeable," and hence his detention is unauthorized by statute, whenever there is some degree of uncertainty as to when his detention will conclude. See id. at 1081 (noting that an alien's detention did not cease to be indefinite merely because his case had been referred to the Attorney General for review "at some point"). Because no one can say exactly when Prieto-Romero's petition for review will be resolved, he argues he is in the same situation as the alien in Nadarajah. We are not persuaded that Nadarajah supports such a broad contention. Prieto-Romero has been found removable by both the IJ and the BIA, but has sought judicial relief from that removal order, thereby delaying his deportation. Judicial review, unlike the administrative process the government invoked in Nadarajah, is subject to strict procedural rules.FN9That independent, external constraint is "satisfactor[y] assur[ance]," cf. Nadarajah, 443 F.3d at 1081, that Prieto-Romero's petition for review will be resolved with reasonable expedition. See Zadvydas, 533 U.S. at 697 (explaining that "determination of removability" has an "obvious termination point"); Jama v. Ashcroft, 362 F.3d 1117, 1117 (8th Cir.2004) ("[W]e believe that the Court will decide the [alien's immigration case] in a reasonable time and that it would be wrong to conclude that there is no significant likelihood that the government will prevail."). There is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that would prevent Prieto-Romero's removal to Mexico if he is ultimately unsuccessful in his petition for review.

FN9. In Nadarajah, the government referred the alien's case to the Attorney General for review. See 443 F.3d at 1081. This referral was "an unusual move," id. at 1075, preventing judicial review of the BIA's decision, see 8 C.F.R. § 1003.1(d)(7), (h)(1)(ii); Ren v. Gonzales, 440 F.3d 446, 448 (7th Cir.2006); In re E-L-H-, 23 I. & N. Dec. 814, 820 (BIA 2005). It is not clear that the Attorney General ever accepted Nadarajah's case; at the very least, there was no "established timeline" for decision. Nadarajah, 443 F.3d at 1075. The Attorney General's review process can take years, even when the request for review is ultimately denied and the BIA's decision is allowed to stand. See, e.g., In re A-H-, 23 I. & N. Dec. 774 (BIA 2005) (five years); In re Luviano-Rodriguez, 23 I. & N. Dec. 718 (BIA 2005) (nine years); In re Marroquin-Garcia, 23 I. & N. Dec. 705 (BIA 2005) (eight years); In re E-L-H-, 23 I. & N. Dec. 700 (BIA 2004) (seven years); In re C-Y-Z-, 23 I. & N. Dec. 693 (BIA 2004) (seven years and review denied). Understandably, the government's assertion that review would end "someday" was little real comfort. Nadarajah, 443 F.3d at 1081.

Prieto-Romero foreseeably remains capable of being removed-even if it has not yet finally been determined that he should be removed-and so the government retains an interest in "assuring [his] presence at removal." See Zadvydas, 533 U.S. at 699. His continued detention, while lengthy, is not indefinite. It remains authorized by § 1226(a) because it is consistent with the implicit limitation that Zadvydas requires us to read into the Attorney General's statutory detention authority. Other circuits have come to the same conclusion. See Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir.2006) (holding alien's prolonged post-removal detention "was necessary to bring about [his] removal" when it "occurred pursuant to his own procuring of stays incident to his legal challenges"); Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir.2004) (holding alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point"); cf. Ly v. Hansen, 351 F.3d 263, 265 n. 1 & 271 (6th Cir.2003) (holding alien's detention unreasonable where there was "no chance of actual, final removal" because his home country, Vietnam, "has not and does not accept deportees because there is no repatriation agreement"). We therefore hold that § 1226(a) permits Prieto-Romero's continuing detention while he pursues judicial review of his administratively final order of removal.

### B.

*9 Prieto-Romero raises a second challenge to the legality of his detention: whether the government may detain him for a prolonged period, all the while placing upon him the burden of proving that he is not a flight risk or danger to the community. As the Supreme Court recognized, there is little question that the civil detention of aliens during removal proceedings can serve a legitimate government purpose, which is "preventing deportable ... aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Demore, 538 U.S. at 528. Even if Prieto-Romero's continued detention is permitted by statute, however, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." See Zadvydas,

533 U.S. at 690-91 (internal quotation marks omitted). There is an important difference between whether detention is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person.

Prieto-Romero received two bond hearings while his case was pending before the IJ and BIA and a third at the direction of the district court. At the third hearing, the IJ found him eligible for bond. Prieto-Romero thus had an opportunity to contest the necessity of his detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA. See 8 C.F.R. § 236.1(d); Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006). Prieto-Romero argues that the three bond hearings he has received were deficient in only one respect, which was that DHS regulations place the burden of proof on the alien to show that he merits release on bond because he is neither a flight risk nor a danger to the community. See Matter of Guerra, 24 I. & N. Dec. at 40. He argues that Tijani v. Willis, 430 F.3d 1241 (9th Cir.2005), does not permit the government to conduct a bond hearing with the burden of proving non-dangerousness on the alien.

In Tijani, we held that an alien who had been subjected to mandatory detention under § 1226(c) could not continue to be detained during his judicial review process unless he was afforded an individualized hearing before an immigration judge. Id. at 1242. Unlike the alien in Tijani, Prieto-Romero was at no point subject to mandatory detention under § 1226(c). Id. The alien in Tijani, unlike Prieto-Romero, had never received any individualized bond determination during his nearly three-year detention. Applying the doctrine of constitutional avoidance, we concluded that Tijani's continued mandatory detention was not authorized under § 1226(c) and that the government had to provide Tijani "a hearing ... before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." Id.

*10 Prieto-Romero contends that Tijani requires all aliens to receive bond hearings where the government bears the burden of establishing ineligibility for release. We need not resolve the issue because Prieto-Romero cannot demonstrate prejudice. See Getachew v. INS, 25 F.3d 841, 845 (9th Cir.1994) (holding that due process violations in immigration proceedings are susceptible to harmless error analysis). The district court directed the IJ in the third hearing to consider the "relevant factors provided in 8 C.F.R. § 241.4(f)" when making an "individualized determination as to whether [Prieto-Romero] is a flight risk or a danger to the community." That regulation lists a number of factors that DHS officials weigh in determining whether to recommend that an alien be detained beyond the removal period under § 1231(a)(6).FN10 As we explained above, Prieto-Romero was actually being detained under § 1226(a), so the IJ should instead have looked to the factors set forth at Matter of Guerra, 24 I. & N. Dec. at 40. However, because both 8 C.F.R. § 241.4(f) and Matter of Guerra direct attention to whether an alien will be a flight risk or a danger to the community, Prieto-Romero, unlike Tijani, has already received an individualized determination of the governmental interest in his continued detention by a neutral decisionmaker.FN11 In setting bond at $15,000 at Prieto-Romero's third bond hearing, the IJ necessarily found-even with the burden of proof on the alien-that Prieto-Romero did not present a flight risk or a danger to the community, and thus merited release from custody. Prieto-Romero is not entitled to habeas relief, because he cannot show that the alleged due process violation adversely affected the IJ's determination that he was eligible for bond.

*FN10. These factors include: "(2) The detainee's criminal conduct and criminal convictions ... (5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully; ... (7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, ... and other defaults; and (8) Any other information that is probative of whether the alien is likely to-(i) Adjust to life in a community, (ii) Engage in future acts of violence, (iii) Engage in future criminal activity, (iv) Pose a danger to the safety of himself or herself or to other persons or to property, or (v) Violate the conditions of his or her release from immigration custody pending removal from the United States." See 8 C.F.R. § 241.4(f).*

*FN11. The record does not support Prieto-Romero's contention that the IJ defied the district court's order by verifying that he "would not have the resources to pay the bond" and then purposely setting a high bond amount to prevent his release, thereby turning a blind eye to the facts in the record that suggested he was not a flight risk. To the contrary, the district court expressly found "that the IJ ... complied with[its] Order" to make an "individualized determination as to whether [Prieto-Romero] is a flight risk or a danger to the community." See Amanda J. ex rel. Annette J. v. Clark County School Dist., 267 F.3d 877, 887 (9th Cir.2001) (district court's factual findings reviewed for clear error, even when finding based on written record). The IJ acknowledged that Prieto-Romero had "significant equities in terms of his family, longstanding employment, and general contributions to the community." Balanced against this was Prieto-Romero's lack of personal assets and the "extremely high rate of failure to appear" for aliens facing removal. The IJ then decided, "apply[ing] all of the above [statutory] factors as well as the order of the ... District Court," that*

*bond in the amount of $15,000 was appropriate. Prieto-Romero had a full and fair bond hearing and a reasonable opportunity to present arguments on his behalf. Cf. Larita-Martinez v. INS, 220 F.3d 1092, 1095 (9th Cir.2000); Colmenar v. INS, 210 F.3d 967, 971 (9th Cir.2000). Therefore, we have no occasion to decide whether an alien could assert a due process challenge to a bond hearing conducted arbitrarily, or otherwise in violation of law.*

### C.

Lastly, Prieto-Romero complains that the IJ set an excessively high bond amount. The statute does not permit us to reach the merits of this claim.Section 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

Prieto-Romero relies on Doan v. INS, 311 F.3d 1160, 1162 (9th Cir.2002), where we suggested that "serious questions may arise concerning the reasonableness of the amount of the bond if it has the effect of preventing an alien's release."Doan's conclusion is not inconsistent with § 1226(e), because an alien who contends that an unreasonable bond amount precludes her release from detention that is statutorily unauthorized does not challenge the" Attorney General's exercise of discretion[, but rather ] the extent of the Attorney General's authority" under the Immigration and Naturalization Act, which is not a matter of discretion, and therefore a fit subject for judicial review. See Zadvydas, 533 U.S. at 688;see also Demore, 538 U.S. at 516-17. Because Prieto-Romero's detention does not run afoul of the implicit statutory limitation announced in Zadvydas, he remains lawfully detained under § 1226(a), and Doan does not license us to review the reasonableness of the amount of bond, even if Prieto-Romero cannot afford to post it. Prieto-Romero would have us second-guess the IJ's discretionary assessment of the bond amount required to secure his presence at removal in the event that his petition for review is denied. We have no authority to entertain his challenge. See§ 1226(e).

### CONCLUSION

*11 An alien whose removal order is administratively final, but whose removal is stayed pending the court of appeals' resolution of his petition for review, may be subject to detention under § 1226(a), but not § 1231(a)(2) or (a)(6).Section 1226(a) does not manifest a clear congressional intent to authorize prolonged and indefinite detention; applying the canon of constitutional avoidance, we construe the statute as not authorizing such detention. All the same, we reject Prieto-Romero's Zadvydas challenge to his three-year detention under § 1226(a). His detention remains statutorily authorized, because he has not established that there is no significant likelihood of his removal in the reasonably foreseeable future. The government will be able to remove him to Mexico in the event that his petition for review of his administratively final order of removal is denied. Prieto-Romero has not been denied procedural due process while in custody. He received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker. The IJ concluded that Prieto-Romero was not a flight risk or a danger to the community, and so merited release on bond. The IJ's subsequent discretionary judgment that a $15,000 bond was necessary to ensure that Prieto-Romero appears at removal is not subject to judicial review.

AFFIRMED.

# EXHIBIT B

Casas-Castrillon v. Department of Homeland Sec., --- F.3d ----, 2008 WL 2902026 (9th Cir. July 25, 2008)

**Luis Felipe CASAS-CASTRILLON, Petitioner-Appellant, v. DEPARTMENT OF HOMELAND SECURITY; Bill Lockyer, Attorney General; US Attorney General, Respondents-Appellees. No. 07- 56261.**

James Fife, Federal Defenders of San Diego, Inc., San Diego, CA, for the petitioner-appellant.

Karen P. Hewitt, United States Attorney; Thomas Stahl and Samuel W. Bettwy, Assistant United States Attorneys, and Thomas Dupree (argued), United States Department of Justice, Washington, D.C., for the respondents-appellees.

Judy Rabinovitz, ACLU Foundation, New York, NY; Cecillia D. Wang, ACLU Foundation, San Francisco, CA; Ahilan T. Arulanantham and Ranjana Natarajan, ACLU Foundation of Southern California, Los Angeles, CA; Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic, Stanford, CA; for the amicus curiae ACLU Foundation and ACLU Foundation of Southern California.
Rachael Keast, Florence Immigrant and Refugee Rights Project, Florence, AZ; Nancy Morawetz, Washington Square Legal Services, Inc., New York, NY; for the amicus curiae the Florence Immigrant and Refugee Rights Project, the American-Arab Anti-Discrimination Committee, the American Immigration Lawyers Association, the Asian Law Caucus, the Center for Constitutional Rights, the Center for Gender and Refugee Studies, the Cornell Asylum and Convention Against Torture Appellate Law Clinic, Hate Free Zone, Human Rights Watch, the International Detention Coalition, the Northwest Immigrant Rights Project, Minnesota Advocates for Human Rights, the National Immigrant Justice Center, the National Immigration Project of the National Lawyers Guild, the New York State Defenders Association Immigrant Defense Project and the U.C. Davis Immigration Law Clinic.

Appeal from the United States District Court for the Southern District of California; Roger T. Benitez, District Judge, Presiding. D.C. No. CV-05-01552-BEN.

Before Jerome Farris, Raymond C. Fisher and Milan D. Smith, Jr., Circuit Judges.

OPINION

FISHER, Circuit Judge:

*1 This appeal concerns whether the government may detain an alien who is a legal permanent resident of the United States 9776 for seven years without providing him with an adequate opportunity to contest the necessity of his detention before a neutral decision maker. We conclude that a prolonged detention must be accompanied by appropriate procedural safeguards, including a hearing to establish whether releasing the alien would pose a danger to the community or a flight risk.

Luis Felipe Casas-Castrillon ("Casas") is a native and citizen of Colombia and has been a legal permanent resident of the United States since 1990. He was served with a notice to appear and detained by the Immigration and Naturalization Service in August 2001, following his release from a state prison for a conviction on an auto burglary charge.FN1 An immigration judge ("IJ") found that Casas was a removable alien because he had been convicted of two crimes involving moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(ii) (providing that "[a]ny alien who ... is convicted of two or more crimes involving moral turpitude ... is deportable").FN2 Casas appealed this determination to the Board of Immigration Appeals ("BIA"), which affirmed the removal order in July 2002.

*FN1. On March 1, 2003, the INS was dissolved as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub.L. No. 107-296, § 471, 116 Stat. 2135, 2205.*

*FN2. Hereinafter, all citations are to Title 8 of the U.S.Code unless otherwise noted.*

From that time until the present, Casas has remained in the continuous custody of the federal government while he has pursued various avenues of relief from removal in the federal district court and the court of appeals, some successful and some not. While he has sought judicial review, his removal has been stayed by court orders for much of the period from 2002 to the present. As of the time that this opinion is filed, Casas is now back before the BIA after this court granted his petition for review of his final order of removal. During this nearly seven-year period of detention, it is unclear what, if any, opportunity Casas has had to argue to a neutral decision maker that his detention is unnecessary because he does not pose a danger to the community or a flight risk.

Casas filed the instant petition for habeas corpus under 28 U.S.C. § 2241 on August 4, 2005. At that time, his administrative proceedings had been complete for approximately three years, but he was awaiting our court's review of his timely filed petition for review of his final removal order. In his pro se habeas petition to

the district court, Casas argued that his detention had become indefinite and was therefore not authorized by any statute, and that his prolonged detention without a meaningful opportunity to contest the necessity of continued detention violated his right to procedural due process. The district court denied Casas' petition on August 15, 2007, and we granted expedited review. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we reverse.

## I.

As we explained in Prieto-Romero v. Clark, No. 07-35458, slip op. at 9292 (9th Cir. July 25, 2008), Casas' entitlement to relief turns in part on locating him within the statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Naturalization Act, codified at 8 U.S.C. §§ 1226 and 1231. This is because"[w]here an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Id. Casas and the government vigorously dispute which statutory provision governs his detention. We conclude that Congress has provided the Attorney General with authority to detain Casas under § 1226(a), which gives the Attorney General a broad grant of discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States."

### A.

*2 The statutory scheme governing the detention of aliens in removal proceedings is not static; rather, the Attorney General's authority over an alien's detention shifts as the alien moves through different phases of administrative and judicial review. This makes the task of determining where an alien falls within this scheme particularly difficult for a reviewing court, because the Attorney General's authority over the alien can present a moving target. The Attorney General's authority over the alien at the time his habeas corpus petition is filed may differ from the authority at the time we hear oral argument on appeal, which may differ in turn from the authority at the time our opinion is filed. Casas' own case presents this problem, because we have considered, granted and remanded Casas' petition for review of his removal order during the same period that we have been considering on appeal his habeas corpus challenge, actions that arguably affect the Attorney General's statutory authority over his detention.

To determine by what authority the Attorney General currently may detain Casas, it is helpful to begin with the Attorney General's authority to detain Casas initially-detention authority Casas does not dispute. Casas was charged with being removable for having committed two crimes involving moral turpitude, and Congress has mandated that such aliens must be taken into custody at the time they are charged. See§ 1226(c)(1)(B) ("The Attorney General shall take into custody any alien who ... is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii)....") (emphasis added). The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. See§ 1226(c)(2). Unlike noncriminal aliens, who are detained under § 1226(a), aliens detained under § 1226(c) are not given a bond hearing before an IJ. Thus these aliens do not have the opportunity to show-as noncriminal aliens would-that their detention 9779 is unnecessary because they do not pose a danger to the community or a flight risk.

Although the Attorney General's initial statutory authority to detain Casas is undisputed, both parties agree that § 1226(c) at some point no longer governed Casas' detention. As Casas' case ably demonstrates, aliens challenging an order of removal may languish in the system for years. Even after the BIA has entered a final order of removal, an alien may petition for review of that removal order with the court of appeals in the judicial circuit in which his immigration proceedings occurred. See § 1252(b). Before Congress enacted the REAL ID Act ("RIDA") in May 2005, Pub.L. No. 109-13, Div. B, 199 Stat. § 231 (2005), certain aliens could also obtain judicial review of constitutional questions or questions of law raised by their final orders of removal through a petition for habeas corpus brought in the district court. See Flores-Miramontes v. INS, 212 F.3d 1133 (9th Cir.2000). Even post-RIDA, aliens may continue to bring collateral legal challenges to the Attorney General's detention authority-such as in this case-through a petition for habeas corpus. See Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir.2006) (holding that "the jurisdiction-stripping provision [of RIDA] does not apply to federal habeas corpus petitions that do not involve final orders of removal"). The courts of appeals have the authority to enter judicial stays of removal for aliens who have petitions for review or habeas corpus petitions pending. See § 1252(b)(3)(B). This means that many aliens may continue to be detained for months, if not years, after their removal order is finalized by the agency, while they seek review of the legal or factual basis for their removal.

*3 Casas has himself explored all of these possible avenues of review and relief. After the BIA affirmed his order of removal, Casas-acting pro se and apparently

unfamiliar with the proper avenue for seeking review of his removal order-first filed with the district court in October 2002 a petition for habeas corpus, which was transferred to this court as a petition for review and subsequently dismissed for lack of jurisdiction in April 2004. Casas petitioned the Supreme Court for a writ of certiorari, which the Court denied in March 2005. See 544 U.S. 910 (2005). Having failed in his attempt to achieve direct review of his removal order, Casas then filed a number of additional petitions for habeas corpus with the district court. Some challenged his final order of removal and others collaterally attacked the state criminal convictions that had formed the basis of the charge of removal. Many of Casas' petitions to the district court were dismissed for lack of jurisdiction.

Casas finally succeeded in obtaining review of his removal order, however, because he had a petition for habeas corpus challenging his final removal order pending before the district court on May 11, 2005, the date that Congress enacted RIDA. RIDA eliminated habeas corpus as an avenue for challenging a final order of removal, but specified that any habeas corpus petition pending before a district court on May 11, 2005 "shall" be transferred to the court of appeals, which "shall treat the transferred case as if it has been timely filed pursuant to a petition for review." See RIDA § 106(c); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052-53 (9th Cir.2005). Pursuant to this act of Congress, the district court transferred Casas' habeas petition to our court, which, in accordance with Congress' instructions, treated it as a timely filed petition for review. In June 2006, we entered a stay of removal pending our disposition of his petition. We eventually granted Casas' petition for review in January 2008 and remanded to the BIA. See Casas-Castrillon v. Mukasey, No. 05-72553, 2008 WL 268949 (9th Cir. Jan. 31, 2008). Our mandate in that case issued in March 2008.

**B.**

Although Casas' road to judicial review of his removal order was surely unusual, the government concedes that at the time Casas filed his present petition for habeas corpus, he was properly understood to be an alien who was detained while awaiting review of a timely filed petition for review, and whose deportation was prevented by the entry of our judicial stay. The government argues that aliens awaiting judicial review of their petitions for review become subject to continued detention under the Attorney General's grant of authority in § 1231(a), which provides for detention "during" and "beyond" the "removal period." As we explained in Prieto-Romero, we disagree. If an alien has filed a petition for review with this court and received a judicial stay of removal, the "removal period" under § 1231(a) does not begin until this court "denies the petition and withdraws the stay of removal." Prieto-Romero, slip op. at 9295. Therefore, Casas was not subject to detention under § 1231(a) at the time he filed his petition for habeas corpus while his petition for review was pending in this court.

*4 Because § 1231(a) does not govern Casas' detention, we must determine which statute does. The statutory scheme presents two possible options: either Casas has remained in detention throughout this seven-year period under § 1226(c), which requires mandatory detention of criminal aliens, or at some point the detention authority shifted to § 1226(a), which gives the Attorney General general discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States." We reject the government's suggestion that § 1226(c) mandates Casas' detention for the duration of his now seven-year confinement. As we explained in Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir.2005), § 1226(c)'s mandatory detention provision applies only to "expedited removal of criminal aliens." The Supreme Court similarly recognized in Demore v. Kim, 538 U.S. 510 (2003), that § 1226(c) was intended only to "govern[ ] detention of deportable criminal aliens pending their removal proceedings," which the Court emphasized typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Id. at 527-28, 530 (emphasis in original). The Department of Homeland Security ("DHS") has similarly interpreted § 1226(c) to apply only "during removal proceedings." See 8 C.F.R. § 236.1(c)(1)(i). The "conclusion of proceedings" occurs upon the dismissal of the alien's appeal by the BIA. See id. § 1241.1(a).

Because neither § 1231(a) nor § 1226(c) governs the prolonged detention of aliens awaiting judicial review of their removal orders, we conclude that Casas' detention was authorized during this period under the Attorney General's general, discretionary detention authority under § 1226(a). Section 1226(a) authorizes the Attorney General to detain an alien "pending a decision on whether the alien is to be removed from the United States." Again, as we explained in Prieto-Romero, "[i]t is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether an alien 'is to be removed.' " Slip op. at 9300. Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to §

1226(a).

We lastly reject the government's suggestion that, even if Casas was not subject to detention under § 1226(c) while his petition for review was pending on appeal, he became subject to such custody again after we granted his petition for review and remanded his case to the BIA. An alien whose case is being adjudicated before the agency for a second time-after having fought his case in this court and won, a process which often takes more than a year-has not received expeditious process. See Tijani, 430 F.3d at 1242. We therefore conclude that the mandatory, bureaucratic detention of aliens under § 1226(c) was intended to apply for only a limited time and ended in this case when the BIA affirmed Casas' order of removal in July 2002. Thereafter, the Attorney General's detention authority rests with § 1226(a) until the alien enters his "removal period," which occurs only after we have rejected his final petition for review or his time to seek such review expires. See Prieto-Romero, slip op. at 9295.

**II.**

*5 Having determined that the government's authority to detain Casas falls under § 1226(a), we now turn to the question of whether Casas is entitled to any habeas corpus relief.

**A.**

Casas first argues that he is entitled to release from detention because his detention has become prolonged and is potentially indefinite and Congress has not statutorily authorized such detention. Although Casas' nearly seven-year detention certainly qualifies as prolonged by any measure, we hold that the government retains authority to detain him under § 1226(a) because Casas faces a significant likelihood of removal to Colombia once his judicial and administrative review process is complete.

In Prieto-Romero, we concluded that an alien whose removal had been delayed "while he pursues judicial review of his administratively final order of removal" had failed to show that his detention was unauthorized by statute, where there was "nothing, such as a lack of a repatriation agreement with his home country or a finding that he merit[ed] mandatory relief from removal, that would prevent [his] removal ... if he is ultimately unsuccessful in his petition for review."Slip op. at 9305. Here, Casas was found removable by both the immigration judge and the BIA, but he repeatedly sought judicial relief from that determination and stays of removal, which delayed his deportation. After we granted his petition for review, the government, on remand, is again seeking to establish that Casas is removable as charged. Should the government succeed, there is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that prevents Casas' removal to Colombia if he ultimately fails in fighting the government's charge of removability. Accordingly, we hold that the government retains an interest in "assuring[Casas'] presence at removal," and his continued detention remains authorized by Congress. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Prieto-Romero, slip op. at 9305.

**B.**

Although we agree with the government that Casas' detention is authorized under § 1226(a) because he remains capable of being removed, Casas raises a second challenge to the legality of his detention-whether the government may detain him for such a prolonged period without providing an individualized determination as to the necessity of his detention. Even though Casas' detention is permitted by statute because keeping him in custody could serve a legitimate immigration purpose, Casas may nonetheless have the right to contest before a neutral decision maker whether the government's purported interest is actually served by detention in his case.There is a difference between detention being authorized and being necessary as to any particular person. We hold that the government may not detain a legal permanent resident such as Casas for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention.

*6 In Demore, the Supreme Court considered a constitutional challenge to the mandatory detention provision of § 1226(c). The primary question before the Court was not whether detention under § 1226(c) violated substantive due process because the alien's detention was indefinite, but rather whether procedural due process required the government to make an individualized finding that detention was justified by a legitimate government interest, such as protecting the community or ensuring the alien's appearance at removal proceedings. See Demore, 538 U.S. at 524 (explaining that the aliens were "challeng[ing] their detention on the grounds that there had been no finding that they were unlikely to appear for their deportation proceedings when ordered to do so"). As the Court recognized, there is little question that the civil detention of deportable aliens during removal proceedings can serve the legitimate government purpose of "preventing deportable ... aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."Id. at

528.However, it was not clear that Congress could authorize the detention of criminal aliens as a class, without providing the individual alien with an opportunity to show that his detention is not necessary to secure his presence at the time of removal.

The Supreme Court upheld § 1226(c)'s mandatory detention provision in Demore, but did so with the specific understanding that § 1226(c) authorized mandatory detention only for the "limited period of [the alien's] removal proceedings," which the Court estimated "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Id. at 530. References to the brevity of mandatory detention under § 1226(c) run throughout Demore.See id. at 513 ("Congress ... may require that [criminal aliens] be detained for the brief period necessary for their removal proceedings."); id. at 523 (noting that the question under consideration was whether "the Government may ... detain [criminal aliens] for the brief period necessary for his removal proceedings"); id. at 526 (noting the "Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"); id. at 529 n. 12 (noting "[t]he very limited time of the detention at stake"). Casas' nearly seven-year detention, if unaccompanied by meaningful, individualized review, would clearly be a far longer period of detention than the "brief" period of mandatory detention during administrative review that the Supreme Court approved in Demore.

The question before us, therefore, is whether legal permanent residents such as Casas, who have been subjected to prolonged detention pending judicial review of their final order of removal or agency reconsideration on remand, may continue to be detained by the Attorney General without receiving an individualized determination of the necessity of detention before a neutral decision maker, such as an immigration judge. We conclude that prolonged detention without adequate procedural protections would raise serious constitutional concerns. As the Supreme Court has repeatedly reaffirmed, " 'the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' " Demore, 538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). Detention during judicial review-like the detention during removal proceedings that Demore considered-may serve the purpose of "preventing deportable ... aliens from fleeing[,] ... thus increasing the chance that, if ordered removed, the alien will be successfully removed." Id. at 528.Even where detention is permissible, however, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (internal quotation marks omitted). We are skeptical that Demore's limited holding that Congress could permissibly authorize "brief" detention without procedural protections can be extended to encompass the nearly seven-year detention at issue here.

*7 We need not resolve this constitutional question, however, because we find no evidence that Congress intended to authorize the long-term detention of aliens such as Casas without providing them access to a bond hearing before an immigration judge. In Tijani, we held that an alien initially detained under § 1226(c) could not continue to be detained during his judicial review process unless he was afforded an individualized hearing before an IJ. See430 F.3d at 1242. Like Casas, Tijani was a legal permanent resident. See id. at 1250 (Callahan, J., dissenting). By the time we issued our decision in his case, he had been detained for two years and eight months, with approximately 20 months of his detention occurring during his removal proceedings. See id. at 1246 (Tashima, J., concurring). Also like Casas, Tijani had filed a petition for review with our court-which accounted for 10 months of his 30-month detention-and we noted that Tijani could be expected to be detained for another "year or more" while we completed our review of his removal order. Id. at 1242.We then concluded that Tijani's mandatory detention throughout this period was not authorized under § 1226(c), because § 1226(c) applies only to "expedited removal of criminal aliens," and "[t]wo years and eight months of process is not expeditious."Id. Applying the doctrine of constitutional avoidance, we concluded that Tijani's prolonged mandatory detention was not authorized by that statute. We therefore held that the government must provide Tijani "a hearing ... before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community."Id.

Although its reasoning was sparse, we believe Tijani was correct that § 1226(c) does not authorize prolonged mandatory detention after an alien's administrative proceedings are complete. Rather, these aliens are detained under the Attorney General's broader grant of discretionary authority under § 1226(a). Further, such prolonged detention of aliens is permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention.

Section 1226(a), unlike § 1226(c), provides such authority for the Attorney General to conduct a bond hearing and release the alien on bond or detain him if necessary to secure his presence at removal. See§ 1226(a)(2). Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be "constitutionally doubtful," we hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing. See Tijani, 430 F.3d at 1242. Thus an alien is entitled to release on bond unless the "government establishes that he is a flight risk or will be a danger to the community."Id. (citing Cooper v. Oklahoma, 517 U.S. 348, 363 (1996)).

*8 Unfortunately, we cannot ascertain from the record before us whether Casas has been afforded an adequate opportunity to challenge the necessity of his detention. The only evidence in the record showing that Casas has received any procedural review relates to a file review he received in November 2005. At that time, two Immigration and Customs Enforcement ("ICE") field officers filled out a "Post-Order Custody Review Worksheet" and recommended that Casas remain in custody because he "would be a flight risk," a determination that was then approved by an ICE field director. Although these ICE officials reviewed Casas' record when making their determination, they did not interview him personally or by telephone. It is not clear from the record whether Casas was even notified of this impending review or whether he was given an opportunity to contest the facts on which the ICE officials based their decision.FN3There is no indication that he had a right to an administrative appeal. This review falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA. See8 C.F.R. § 236.1(d); Matter of Guerra, 24 I. & N. Dec. 37, 38-40 (BIA 2006).

*FN3. The record contains a "Notice of Alien of File Custody Review," which explained that Casas' detention status would be reviewed in 90 days and that he would have the opportunity to demonstrate to the satisfaction of the Attorney General that he was neither a danger to the community nor a flight risk. This notice is undated but contains the handwritten notation "10/04," which may indicate that it was sent more than a year before Casas' November 2005 file review.*

Although neither party submitted any evidence showing that Casas has ever received an ordinary bond hearing, we take judicial notice of Casas' administrative record, which shows he received a bond hearing in January 2002 under unusual circumstances. While Casas' case was still pending before the agency in January 2002, this court held that mandatory, bureaucratic detention of legal permanent residents under § 1226(c) was unconstitutional. See Kim v. Ziglar, 276 F.3d 523, 526 (9th Cir.2002), rev'd by Demore v. Kim, 538 U.S. 510 (2003). Pursuant to our decision in Kim, the agency provided Casas with a bond hearing, at which he was found eligible for bond. The amount was set at $25,000, a sum Casas was unable to pay. Casas appealed the bond determination to the BIA, but the BIA upheld the amount in April 2002. Approximately one year later, the Supreme Court overturned our decision and held that mandatory detention of criminal aliens for "the limited period of his removal proceedings" does not violate the Due Process Clause. Demore, 538 U.S. at 531. It is not clear what, if any, continued legal effect this bond hearing has, given that it was ordered pursuant to a nowvacated constitutional ruling.

Because the parties did not develop an adequate record of the procedural review that Casas has received, we cannot determine whether the government has afforded him a bond hearing that complies with the requirements of Tijani.We therefore reverse the district court and remand with instructions to grant the writ unless, within 60 days, the government provides Casas with "a hearing ... before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community," or shows that he has already received such a bond hearing.Tijani, 430 F.3d at 1242.
*9  REVERSED AND REMANDED.